**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Daniel PEREZ, Defendant-Appellant.**

**No. 1401, Docket 77–1076.**

United States Court of Appeals,
Second Circuit.

Argued July 20, 1977.

Decided Nov. 11, 1977.

---

Helena Pichel Solleder, New York City, for defendant-appellant.

Jeffrey S. Blum, Washington, D. C. (Myron C. Baum, Acting Asst. Atty. Gen., Washington, D. C.), Gilbert E. Andrews, and Robert E. Lindsay, Tax Div. Dept. of Justice, Washington, D. C. (David G. Trager, U. S. Atty., and Allan K. Sleppin, Sp. Atty., Brooklyn, N. Y., of counsel) for plaintiff-appellee.

Before MESKILL, Circuit Judge, and NEAHER and COFFRIN, District Judges.*

COFFRIN, District Judge:

This is an appeal from a conviction entered after a jury trial in the United States District Court for the Eastern District of New York, Bramwell, *J.*, for two counts of violating 26 U.S.C. § 7206(2) by unlawfully and willfully causing the preparation and presentation of a United States Information Return (Internal Revenue Service ("IRS") Form 1099) which was false and fraudulent as to material matters.[1] Appellant raises three issues on appeal. The first is whether his retrial on two counts on which the jury had been unable to reach a verdict in a prior trial violated his right to be free from double jeopardy. The second is whether there was sufficient evidence produced at the second trial to establish appellant's guilt beyond a reasonable doubt. Finally, Perez raises various miscellaneous claims of error upon which we must determine whether the convictions should be reversed. We hold that Perez was not placed twice in jeopardy and that there was sufficient evidence for his conviction. We see no merit in his miscellaneous claims. Accordingly, we affirm.

On May 19, 1976, Perez was indicted on three counts of violating 26 U.S.C. § 7206(2). The indictment arose out of an investigation conducted by the IRS at the Aqueduct Racetrack in New York. During the course of that investigation, between November 1975 and February 1976, IRS Special Agent Gerald Levy observed that

---

* Honorable Edward R. Neaher of the United States District Court for the Eastern District of New York, and Honorable Albert W. Coffrin of the United States District Court for the District of Vermont, sitting by designation.

1. Perez was sentenced to concurrent terms of two years imprisonment. Execution of this sentence was suspended and Perez was placed on probation for three years with a special condition that he attend Gamblers Anonymous on a regular basis.

Perez was at the racetrack daily, and that he would often be in the vicinity of a widow where bettors could cash winning tickets on triple bets,[2] sometimes approaching and speaking to people who were cashing their winning tickets at the window.[3]

At appellant's first trial, Agent Levy testified that on November 24, 1975, he had observed Perez cashing a winning ticket paying more than $600 and completing the form (Form 317) necessary to cash the winning ticket. Levy examined and initialed the form, which contained the name, address and purported signature of Miguel Valles, 865 Crotona Park, New York, New York. This form was the subject of Count I of the three count indictment tried at that trial.

On January 21, 1976, Levy observed Perez filling out a form at the over $600 previous day window, and, after turning in the form, receiving several hundred dollars from the cashier. After Perez left the window, Levy directed another agent to initial the form. The form contained the name Carlos Diaz, and the address 148 West 17th St., Apt. 5, New York, New York. It also included a signature purported to be that of Carlos Diaz and the social security number 129–48–1254 which was supposed to be that of the person named on the form. This form was the basis of Count II of the indictment.

On January 27, 1976, this same sequence occurred, except that in this case agent Levy himself initialed the form. That form contained the same information as the one filled out on January 21, and was the subject of Count III.

Perez was originally tried on July 21, 1976, on all three counts of the indictment. The jury acquitted him on Count I—the

count arising out of the form signed in the name of Miguel Valles—but was unable to reach a verdict on Counts II and III. Because of their inability to agree on a verdict for those two counts, the trial judge declared a mistrial after two days of deliberation. By that time the jury had sent Judge Bramwell a total of twelve notes containing nine inquiries and three statements that they were deadlocked.

The jury's first note to the court was delivered at 5:35 p.m. on July 26, 1976, three hours after it began its deliberations. The note read:

What is the procedure when the jury cannot come to a unanimous decision?

While counsel and the court were discussing this note and defense counsel's request that the jury be discharged, a second note arrived from the jurors:

Re: Number 1 and 2. Conceding that all the information on the 1099 is accurate and correct and that all the information on the NYRA Incorporated form number 317 is in fact accurate and correct, other than the signature which is conceded to be a forgery authorized by the person whose name is used, to wit: Don Carlos Diaz, can he be guilty of the last two counts?

To this inquiry the court responded that the question was too long to permit an appropriate answer and that the jury should go back and rephrase it. Defense counsel objected to this procedure, contending that the question was clear and called for a simple "no" answer.

The jury did comply about fifteen minutes later, asking the court:

If all the information on the 1099 form is accurate, can Daniel Perez still be guilty by virtue of the forged signature on the NYRA 317?

---

2. The "triple" bet is made on the ninth race at Aqueduct and is won by picking the horses that come in first, second and third in the ninth race. The "daily double" is won by picking the winner of the first and second race. The "exacta" is won by picking the horses that come in first and second in a race. The odds against winning any of the above-described bets are very high and accordingly a $2 winning ticket will sometimes return over $600.

3. When a bettor wins in excess of $600 on a $2 bet he is required to present identification and fill out a verification Form 317 at special windows which only pay winnings in excess of $600. There is also one window—the over $600 previous day window—which pays winnings of over $600 from previous days but for which the winning tickets have not yet been cashed.

Defense counsel again suggested that the court answer in the negative, and informed the court that any verdict which came in as a result of further delay would be a coerced verdict. The court disagreed, telling the jury:

Now there is confusion as to the word "accurate." Does that word "accurate" mean duplication or does it mean truthful? In other words, the jury will have to go back and consider, they may send the Court another note as to whether "accurate" as used meant a duplication or it meant truthful. That's what the Court would like to know. Thank you.

The jury exited the courtroom at 6:10, but returned at 6:13 with a note which asked

[i]f all the information on the 1099 is truthful, can Daniel Perez still be guilty by virtue of the forged signature and the NYRA 317.

The court then instructed the jury that it would be a question of fact for the jury to decide, in light of the testimony and the evidence which is before the Court, as to whether or not Daniel Perez can be so found guilty. It is a question of fact for the jury. The jury will return for deliberation.

At 7:30 p.m. the jury sent the court a note which said simply:

We are at a deadlock. What now?

At that point the jury was excused for the night and instructed to return the following morning.

The next morning, over defense counsel's objection, the court again gave the jury general instructions on the law of the case. Then, in its seventh note, the jury asked if it could hear the minutes regarding the search for Diaz and queried:

If no information in the 1099 in counts two and number three is incorrect can these 1099's be false and fraudulent?

The court answered "no." The jury also asked whether the thoroughness of the search for Carlos Diaz was a fact in dispute and, if so, how much weight it should be given. The court's response to their inquiry was that this was a question of fact for them to consider.

At 3:30 p.m. on July 27, the jury sent the following note:

We would like a review of our messages to the Court and the Judge's comments on the same.

Judge Bramwell replied that he had answered only the seventh question and that his answer had been "no." At the jury's request, Judge Bramwell also reread that portion of the charge dealing with the elements of the offense.

At 4:56 p.m. the court was notified that the jury was hopelessly deadlocked on Counts II and III, but that Perez was not guilty on Count I. After delivering an Allen-type charge at defense counsel's request, the judge received the jury's final note indicating that it was deadlocked. At this point Judge Bramwell discharged the jury and declared a mistrial.

Following the first trial, Perez moved to dismiss the indictment on the grounds that he was "brought to trial once on these charges, and acquitted of the First Count which is the same crime as is charged in the remaining two counts." This motion was denied.

Appellant also petitioned this court for a writ of mandamus to prevent a retrial on Counts II and III. The writ was denied, and Perez was retried and convicted on Counts II and III. The principal difference between the two trials was the testimony of an 18-year old student named Carlos Diaz. Diaz did not testify in the original trial, but at Perez' second trial he testified that he had lost his social security card (numbered 129–48–1254); that he had never been to a racetrack or placed a bet at the offtrack betting corporation and had never asked anyone else to place a bet for him; that he had never lived at nor did he have any relatives living at the address given by Perez on the identification forms; that he did not know and had never before seen Perez; and that he had never authorized anyone to fill out in his name the identification forms filled out by appellant.

Perez himself testified that he had never won over $600 on a $2 bet and that the most he had ever won on a single bet was $500. He further testified that he realized that winners of over $600 on a $2 bet were required to fill out the identification form before they could collect their winnings. He denied ever having cashed a winning ticket for Carlos Diaz, and, in response to a question posed by the judge, he denied having signed either identification form.

## I

Appellant's double jeopardy claim rests on his assertion that the jury in the original trial had actually made the factual finding that he was not guilty of any violation of 26 U.S.C. § 7206(2), but that the trial court failed to properly answer the jury's inquiries and, by the responses it made, confused the jury into its ultimate inability to reach a unanimous verdict on Counts II and III.

It is undisputed that appellant failed to raise in his second trial the claim of double jeopardy that he attempts to raise here. The constitutional immunity from double jeopardy is a personal right which, if not affirmatively pleaded by the defendant at the time of trial, will be regarded as waived. *United States v. Scott,* 150 U.S. App.D.C. 323, 464 F.2d 832 (1972); *United States v. Buonomo,* 441 F.2d 922 (7th Cir.), *cert. denied,* 404 U.S. 845, 92 S.Ct. 146, 30 L.Ed.2d 81 (1971); *Grogan v. United States,* 394 F.2d 287 (5th Cir. 1967), *cert. denied,* 393 U.S. 830, 89 S.Ct. 97, 21 L.Ed.2d 100 (1968); *Haddad v. United States,* 349 F.2d 511 (9th Cir.), *cert. denied,* 382 U.S. 896, 86 S.Ct. 193, 15 L.Ed.2d 153 (1965); *Ferina v. United States,* 340 F.2d 837 (8th Cir.), *cert. denied,* 381 U.S. 902, 85 S.Ct. 1446, 14 L.Ed.2d 284 (1965); *Kistner v. United States,* 332 F.2d 978 (8th Cir. 1964); *Barker v. Ohio,* 328 F.2d 582 (6th Cir. 1964); *Harris v. United States,* 237 F.2d 274 (8th Cir. 1956). *See* Fed.R.Crim.P. 12(b)(2), 12(f).

To avoid the effects of such a waiver, appellant would have us deem his post-trial motion to dismiss the indictment an effective assertion of his double jeopardy claim. However, it is clear that the claim he press-es here is *not* the same as the claim he advanced in his post-trial motion to dismiss the indictment. There, appellant simply argued that the offenses charged in the three counts of the indictment were identical, and that acquittal on one count necessarily required acquittal on the other two. Appellant contended in that motion that if the jury, knowing appellant to be Daniel Perez, found that no violation had occurred when he signed the name Miguel Valles, then it could not find that he committed a crime when he signed the name of Carlos Diaz. In this appeal, however, appellant does not argue that his acquittal on Count I in the first trial logically compels the conclusion that the jury had determined him not to be guilty on Counts II and III, but argues instead that the jury's notes to the court revealed that it had actually come to the independent conclusion that he did not commit the offenses charged in Counts II and III.

Appellant's double jeopardy claim in this appeal was likewise not effectively raised in his mandamus petition. There, he claimed that a second trial would be "a gross miscarriage of justice, constitutes double jeopardy and would be 'highly deleterious to the administration of justice.'" In his statement, a retrial "constitutes double jeopardy," it is not clear whether appellant meant that his former jeopardy arose in the manner he proposed in his motion to dismiss the indictment or that it arose in the manner he suggests in this appeal. In any event, his bald assertion of double jeopardy in a mandamus petition directed to this Court rather than to the district court is scarcely the sort of affirmative pleading of the defense which is necessary to avoid a finding of waiver. Thus, we hold that appellant waived his defense of double jeopardy and is not entitled to raise it here for the first time.

Even if the issue had been raised below and preserved for this appeal, it is to no avail for appellant to present it here. The circumstances leading up to the declaration of a mistrial in the original prosecution do not lead us to appellant's forcefully

argued conclusion that the jury had found facts which could only have supported a verdict of acquittal on Counts II and III. While it is plausible that the number and content of the jury's notes to Judge Bramwell suggested that the jury may have been leaning toward acquittal, there are alternative—and equally plausible—interpretations. For example, some of the notes may have been authored by a sole holdout, who hoped to obtain an answer which could be used to persuade the others to abandon their positions in favor of conviction.

Furthermore, the notes themselves are readily susceptible to interpretations other than that urged upon us by Perez. They were not uniformly clear, and some were not even internally consistent. For example, the juxtaposition of the words "forgery" and "authorized" in the second note yields an apparent contradiction on a crucial question regarding an element of the offense. Nor was it unreasonable for the trial judge to find ambiguity in the word "accurate" in the context of the jury's third inquiry. Indeed, the trial court's attempts to ascertain the precise meaning of the jury's questions seemed to engender only more confusion.

The grant of a mistrial and the setting of a new trial, rather than a dismissal, is within the discretion of the trial judge. *United States v. Castellanos,* 478 F.2d 749 (2d Cir. 1973). The longstanding rule regarding the propriety of declaring a mistrial and putting the defendant on trial again for the same offense is derived from *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824) where the Supreme Court held that where a jury is properly discharged for failure to agree upon a verdict, and a mistrial is declared, the defendant may be put to a new trial without violating the double jeopardy clause. Because the Supreme Court declared that the test of the propriety of the discharge of the jury would be whether such a result was "a manifest necessity," *id.* at 580, the "essential question" in a case such as this is "whether the trial judge abused his discretion in terminating the trial short of verdict." *Castellanos, supra* at 751.

As we have indicated, we think the confusion which pervaded its notes to Judge Bramwell belies any inference that the jury was "leaning" toward acquittal. On at least three occasions, the jury noted that it could not reach a unanimous decision or was deadlocked. By the time the twelfth note had reached Judge Bramwell, such a conclusion was virtually inescapable. By that point, the jury had had specific answers to some of its questions, requests for clarification of others, a rereading of the elements of the offense, and an *Allen* charge. Appellant's first trial had at that stage been paralyzed by a genuinely deadlocked jury, the "classic example" of a situation where it was manifestly necessary to discharge the jury. *See Castellanos, supra* at 751; *Downum v. United States,* 372 U.S. 734, 736, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1967). We conclude that Judge Bramwell did not abuse his discretion in declaring a mistrial, and that the second trial did not violate Perez' right to be free from double jeopardy.

## II

Appellant claims that there was insufficient evidence to establish his guilt in the second trial beyond a reasonable doubt. He argues that the Government failed to prove that he was a "ten percenter"—*i.e.,* one who cashes winning tickets for others in return for a share of the winnings—because it failed to establish who the true winner actually was. Because the case was supposedly brought to the grand jury on the theory that appellant was a ten percenter, appellant contends that the Government's failure to prove this theory vitiates the conviction.

Appellant has entirely misconceived the nature of the 26 U.S.C. § 7206(2) offense and the nature of the evidence required to prove it. There is no requirement that the Government establish *why* a defendant caused the filing of a return with false or fraudulent material. Whether or not Perez was a ten percenter is immaterial. The Government had to prove only (1) that Perez aided, assisted, procured, counseled, ad-

vised or caused the preparation and presentation of a return, (2) that the return was fraudulent or false as to a material matter, and (3) that the act of the appellant was willful. The indictment charged Perez with causing the preparation and presentation of IRS Form 1099's on which the names of the recipients of income from payment of pari-mutuel betting tickets were falsely stated, and that is what the proof at trial established.[4] *Cf. United States v. Russo,* 564 F.2d 2 (2d Cir. 1977). It is clear from the evidence that the Carlos Diaz whose social security number was used on the identification forms was not the true winner. It is also clear from the evidence that Perez was not the true winner. For conviction under § 7206(2) that is sufficient.

Perez also claims that the acquittal on Count I shows that the jury disbelieved the IRS agents' testimony making the evidence insufficient as a matter of law as to Counts II and III. This argument is entirely specious. Count I differs from the other counts as to the dates of the events, names of the persons used and testimony concerning the person whose name appeared on the form. Most importantly, the Government's handwriting expert provided damning evidence on Counts II and III that he was unable to provide on Count I.

## III

■ Appellant's claims of miscellaneous errors range from the insubstantial to the frivolous. The only one which justifies any comment at all is his contention that the court erred in charging the jury that Perez was indicted under 18 U.S.C. § 2, subsection (b) of which provides that anyone who willfully causes an act to be done which if directly performed by him or another would be an offense against the United States is punishable as a principal.

4. In addition to the testimony of Carlos Diaz and Perez himself, the Government produced IRS Agent Levy who testified as to what transpired at the window, Treasury Department Document Analyst Marvin Rennart, who testified that after examining handwriting exemplars of appellant, he concluded that appellant

While Perez is correct that there was no evidence that he acted in concert with anyone else, it was clearly demonstrated— through the testimony of Assistant Treasurer Burns of the New York State Racing Association ("NYRA")—that defendant's filing of the Identification Form 317's caused the NYRA to file IRS Form 1099's which were false as to a material matter. Furthermore, the language of § 7206(2) is in terms of "aids or assists in, or procures, counsels, or advises the preparation." In the context of this case, it appears helpful to the jury, if not essential to establish a crime, to add the aiding and abetting language of "causes an act to be done which, if directly performed by him. . . ." Appellant has misapprehended the purpose of the 18 U.S.C. § 2 language in the charge, and has claimed error where there is no error. Because this and each of appellant's other miscellaneous claims are without merit, the conviction is affirmed.

had signed each of the identification forms (317), and Joseph Burns, Assistant Treasurer of the New York State Racing Association, who testified that the 317 forms here were used by the Association to prepare the IRS Form 1099's.