UNITED STATES of America, Appellee,

v.

William J. MacQUEEN, Leonard A. Siniscalchi, Diamond J. Armello, Charles P. Zimmerman, Appellants.

Nos. 255, 259, 334 and 335, Dockets 78–1271, 1272, 1273, 1294.

United States Court of Appeals, Second Circuit.

Argued Oct. 24, 1978.

Finally Submitted Nov. 3, 1978.

Decided April 2, 1979.

Michael H. Soroka, Asst. U. S. Atty. for the Eastern District of New York, Brooklyn, N. Y. (Edward R. Korman, U. S. Atty., Mary McGowan Davis, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for appellee.

Eugene Mastropieri, Glendale, N. Y., for appellants Diamond J. Armello, and Charles P. Zimmerman.

Thomas J. O'Brien, New York City, for appellant Leonard A. Siniscalchi.

Martin Gotkin, New York City, for appellant William J. MacQueen.

Before FEINBERG and MULLIGAN, Circuit Judges, and PRATT, District Judge.*

PRATT, District Judge:

All defendants appeal from a judgment of the United States District Court for the Eastern District of New York (Sifton, J.) entered on June 2, 1978, convicting them, after a jury trial following a mistrial, of conspiracy to manufacture firearm silencers in violation of 18 U.S.C. § 371 and 26 U.S.C. § 5861. Defendant MacQueen appeals, too, from a judgment entered by the same court on the same day, convicting him of 22 substantive violations of the National Firearms Act. 26 U.S.C. § 5801 *et seq.*

MacQueen argues that the conduct of government undercover agents who collected the evidence was so shocking that it violated his fifth amendment right to due process. Siniscalchi argues that there was insufficient evidence to support his conviction, and that retrial violated his double jeopardy rights. Without filing briefs Armello and Zimmerman adopt the arguments as to due process and sufficiency of evidence.

The convictions of MacQueen, Armello and Zimmerman were affirmed from the bench after oral argument with a brief statement of the reasons for affirming. Decision was reserved on Siniscalchi's appeal, because the double jeopardy issue, which had become a major focus of the oral argument, had not been briefed by appellant, and appeared to require further consideration. At the court's suggestion, supplemental briefing was submitted in letter form by Siniscalchi's attorney and by the government's attorney. We now affirm Siniscalchi's conviction, concluding that there was sufficient supporting evidence and that his belated double jeopardy claim is without merit regardless of whether it was waived by failure to properly assert it below.

## I. SUFFICIENCY OF THE EVIDENCE

■ The evidence connecting Siniscalchi to the firearms conspiracy was gathered by government undercover agents, posing as

---

* Hon. George C. Pratt, District Judge of the Eastern District of New York, sitting by designation.

Mafia hitmen, who met twice with Mac-Queen and Siniscalchi to arrange the purchase of silencers and unregistered guns from MacQueen, and secretly tape-recorded conversations at these meetings. At the trial the jury heard the tapes, including the parts transcribed and set forth in the margin,[1] in which the four men discussed Mac-Queen's plan to murder co-conspirators Armello and Zimmerman.

Counsel for Siniscalchi sought to minimize this evidence, arguing to the jury and on appeal that Siniscalchi was present at each meeting with knowledge of the conspiracy, but that he did not actively join the conspiracy. However, a jury could reasonably interpret Siniscalchi's explicit acknowledgment, "Right. Now if I don't want to be involved which I am involved, I feel I'm involved", and his statement, "*We* might as well get a lot [of silencers]." (emphasis added) as linking him to the conspiracy. In context these statements by Siniscalchi provide evidence from which " 'a reasonable mind might fairly conclude guilt beyond a reasonable doubt.' " *United States v. Taylor*, 464 F.2d 240, 243 (2d Cir. 1972).

## II. DOUBLE JEOPARDY

In order to evaluate the double jeopardy claim it is first necessary to review in some detail the events surrounding jury deliberations on the first trial.

### A. *Facts.*

On February 14, 1978, after two weeks of the first trial, Judge Sifton gave his initial charge to the jury. Because the indictment included a four-man conspiracy count and 24 substantive counts divided into 7 separate groups, the charge was long and complex. The jury retired for deliberation before lunch on Tuesday, February 14, 1978. Later in the day the jury sent out two notes requesting certain testimony and exhibits, and asking questions about the conspiracy count. Their first question was whether they could convict just one defendant of conspiracy and find the other defendants not guilty, to which the judge answered, "In the circumstances of this case, no, you may not." Judge Sifton told the jury, in response to their second question, that they could not consider the government agents as part of the conspiracy, and that,

> "The same element also has a bearing on the first question since more than one defendant must agree to the illegal objectives of the conspiracy. You cannot convict a single defendant because of the

---

1. Undercover agent: We're talking about murder ok. The option you have right now is this. Leave right now and forget about it . . .

   MacQueen: No.

   Undercover agent: Keep your mouth shut, or you stay here.

   MacQueen: No.

   Undercover agent: Let him answer. This way we know where he's coming from.

   Siniscalchi: No, no. I know he's feeling me out. He's got a right to.

   MacQueen: Answer.

   Siniscalchi: In other words if anything is done that I don't want to do, I could tell you. I would walk out.

   Undercover agent: That's right.

   Siniscalchi: Right.

   Undercover agent: Right now.

   Siniscalchi: Right. Now if I don't want to be involved which I am involved, I feel I'm involved.

   Undercover agent: No you're not involved.

   Siniscalchi: Well in certain respect because you know and if you guys don't trust me, I mean that's, that's your thing.

   Government's supplemental appendix at A 58. The jury also heard the recording of the following conversation:

   Undercover agent: I'll speak to my guy. Usually he works alone alone as far as I know. I'm sure when he goes there he's not going to be alone. Now I would discuss what we're discussing right now as far as Lenny [Siniscalchi], I don't know, I don't know if Lenny wants to go with my man, or my man wants to go with Lenny. This is something we'll sit down again, cause we have time on our side.

   MacQueen: Alright.

   Undercover agent: Right now all I'm saying the way it's set up now, we're meeting, we're drinking, O.K. The night when it does go down I prefer all of us to be in a restaurant, four people, they have to call us all liars. Okay, now, getting back to these two alright, should we go back to Diamond [Armello] and Charley [Zimmerman] and order two? I don't think so, I think that . . .

   Siniscalchi: We might as well get a lot.

   *Id.* at 55.

absence of an agreement among two defendants, at least two defendants to the illegal objectives of the conspiracy."

The jury then retired and sent out an additional note describing more specifically the testimony they wished to hear from the tape recordings. At 5:56 p. m. the jury returned to the courtroom, heard portions of the tapes as well as certain other testimony they had requested, and were then excused for the evening and directed to return for further deliberations at 9:30 a. m. the next day, Wednesday.

On Wednesday, Judge Sifton gave additional instructions with respect to conspiracy and entrapment. After more deliberations the jury inquired on the conspiracy count. "Must all four defendants be considered as one unit * * * ? " Judge Sifton responded,

"[N]ot only are you not required to consider all defendants as a unit, but you should not consider all defendants as a unit. * * * [E]ach defendant's guilt or innocence of any count in the indictment is to be considered individually, and the fact that you have one defendant guilty or innocent with regard to Count 1, or any other count, should not influence in any way your determination with regard to any other defendant."

He further instructed them that they had an obligation to consider, "each count separately and in considering each count to consider the guilt or innocence of each defendant separately * * *," that, "[a]t the same time you should consider the guilt or innocence of each defendant separately * * *," and that,

"You are * * * required to consider each defendant individually to determine whether each element of the charge is a fact beyond a reasonable doubt with regard to each defendant; and the fact that you may find one defendant guilty or innocent with regard to any count of

the indictment does not require you, and should not be considered by you as requiring you to find any other defendant guilty or innocent of that same count."

Later, when the jury reported it had reached a verdict on all counts except 1, 15 and 20, Judge Sifton rejected the government's request for an Allen charge and instructed the jury by note that they had not yet deliberated long enough, and that they should continue their deliberations on the counts on which they had not yet reached a verdict. Some time later the jury indicated that they had reached agreement on all but count 1, on which they asked for further clarification. After hearing all counsel, the court gave further instructions with respect to the conspiracy count and, after still more jury deliberations, the court received the jury's verdict with respect to counts 2 through 25,[2] after which the jury was excused with instructions to return the next morning, Thursday, at 9:30 a. m.

On their way to the subway that evening, two female jurors were attacked by four youths and suffered minor injuries and the loss of a pocketbook. When the jury reconvened the next morning, Judge Sifton made careful inquiry of the two women jurors and then of the entire panel, one of whom acknowledged being "deeply moved" by what had happened. MacQueen's attorney moved for a mistrial. Siniscalchi's attorney stated, "I do not join in that application." Neither did counsel for Zimmerman and Armello join MacQueen's application. In order to give the jurors a "period of recuperation from a draining incident," the trial judge excused the jurors until the following day, Friday, at 9:30 a. m. so that they could then continue their deliberations on the conspiracy count.

After some cautionary instructions the next morning, the jury resumed its deliberations. At approximately 11:15 a. m., responding to a further jury note, the court repeated its instructions on entrapment.

2. The indictment contained 25 counts; appellant Siniscalchi was named in counts 1, 2, 6, 11, and 17. Counts 6, 11, and 17 were dismissed as against Siniscalchi at the conclusion of the government's case, at the first trial, and the

jury acquitted Siniscalchi on count 2. This left only count 1, the conspiracy count, on which the first jury deadlocked, and the second convicted all defendants, including Siniscalchi.

At approximately 12:05 p. m. the jury indicated by note that it could not reach agreement on the conspiracy count. The government's suggestion of an Allen charge was opposed by Siniscalchi's counsel who said, "I am not asking for a mistrial at this point." He also asked the court "to inquire of the jury as to whether they have reached a verdict as to anyone or any defendant. I think that's a possibility that they don't know that they could reach a verdict on one." The court responded, "I think they're very well aware of that from the nature of the questions they have asked." Judge Sifton suggested a modified Allen charge which was agreed to by all counsel.

A further jury note at approximately 3:30 p. m. again indicated inability to agree on the conspiracy count. The following colloquy then occurred:

Mr. Gotkin [counsel for defendant MacQueen]: Your Honor, assuming the jury's discharged, there's nothing improper about us talking with the jury, I mean, under the circumstances.

The Court: I certainly don't encourage it. I really don't encourage it at all. In fact, I discourage it. I think we've been through quite an experience, that I really don't see the point of it. I think under the circumstances, that at this point it is appropriate to discharge the jury.

Mr. O'Brien [counsel for defendant Siniscalchi]: Your Honor, I would agree. Again, it just lingers in my mind that's possible that they could have reached a verdict with one or more defendants, and I would just again, before you discharge the jury, say am I correct that you cannot reach a verdict as to any defendant.

Mr. Gotkin: I object to that.

The Court: No, I'm not going to ask them that question for the reason I've indicated earlier, is that their questions have indicated quite a bit of sensitivity to that particular point. All right, bring in the jury, please.

The court then discharged the jury at 3:40 p. m.

Later in the afternoon, the following incident occurred:

Mr. O'Brien: Your Honor, I just spoke with the jury.

Mr. Gotkin: I'm sorry?

Mr. O'Brien: I said I just spoke with the jury. They told me that Lenny Siniscalchi had been found not guilty since Tuesday, and they did not know they can bring in a verdict on just one, and that the verdict was nine to three for conviction on the other two, and the issue that had held them up was entrapment.

Mr. Gotkin: Nine—three for conviction on the other three defendants?

Mr. O'Brien: Yes. And the issue was held up.

The Court: Well, I cautioned you against making that sort of inquiry. You've made that sort of inquiry. You can't use it to impeach the results. We can only go on the objective appearance of things. I find no reason on the basis of what we have seen that they were confused on that score, and the information which was, may instruct us in future situations, but I don't think it has any bearing on the situation here.

Four days later Siniscalchi's attorney moved under F.R.Cr.P. 29(c) for a judgment of acquittal on the ground there was insufficient evidence to sustain a conviction and that a reasonable doubt existed in the minds of all the jurors. In his supporting affidavit Siniscalchi's counsel stated that after the jurors had been dismissed he had spoken to four or five of them, one of whom volunteered that the jury had unanimously found Siniscalchi not guilty on the conspiracy count. When asked why they had not returned such a verdict, all of those present said they believed they had to reach a unanimous verdict as to all defendants before rendering a verdict. From this, Siniscalchi's counsel argued that Siniscalchi had in effect been found not guilty, that the court at least should make inquiry of the jurors to determine whether they had found Siniscalchi not guilty, and that a judgment of acquittal was necessary to prevent a miscarriage of justice, since if the court had made the inquiry requested by Siniscalchi's counsel prior to discharging the jury, Siniscalchi would have been acquitted.

On April 3, 1978, just prior to commencement of the retrial, Judge Sifton rendered an oral decision on Siniscalchi's motion for judgment of acquittal. He rejected the argument directed at the sufficiency of the evidence, taken by itself or in combination with the additional information about the jury's asserted but unreported agreement with respect to Siniscalchi.

## B. *Claims.*

At no time prior to commencement of the second trial, or indeed until oral argument of this appeal, did Siniscalchi claim that retrial infringed his double jeopardy rights. Siniscalchi's appellate brief asserts the central question to be whether the trial court erred in failing to grant his Rule 29 motion for a judgment of acquittal.[3] Counsel argues that the evidence presented was insufficient to permit the jury to find that Siniscalchi joined in the conspiracy. In support, counsel urges the court to consider that the first jury found Siniscalchi not guilty of conspiracy, in an "unannounced verdict" and that the jurors did not announce the verdict in open court because they were unaware that they could render a verdict on only one defendant.

In its initial appellate brief the government correctly brushes aside the "unannounced verdict" urged by Siniscalchi, because the only "verdict" recognized by the Federal Rules of Criminal Procedure is one that is, "returned by the jury to the judge in open court." Rule 31(a). The government reasons that Siniscalchi's claim is essentially one of double jeopardy based on error in the court's declaration of a mistrial. Since Siniscalchi did not specifically raise this double jeopardy claim prior to commencement of the second trial, the government argues that the claim was waived, citing *United States v. Klein,* 582 F.2d 186 (2d Cir.), cert. denied, —— U.S. ——, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979) and *United States v. Perez,* 565 F.2d 1227 (2d Cir. 1977).

Considerable time was devoted at oral argument to whether or not Siniscalchi's failure to claim double jeopardy, *in haec verba,* constituted a waiver of that constitutional right. With permission of the court, Siniscalchi's attorney submitted a post-argument letter-brief in which he urges that double jeopardy rights, which are not waived by pleading guilty, *Menna v. New York,* 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975); *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), cannot be waived here, where the relevant facts were already known to the court and only the words "double jeopardy" were omitted from the motion for judgment of acquittal. Siniscalchi's attorney also argues that if a waiver were to be found because of counsel's mistake, then the conviction should be reversed on the ground that defendant was deprived of the effective assistance of counsel.

## C. *Discussion.*

Our decision in *United States v. Perez,* 565 F.2d 1227 (2d Cir. 1977), held that a double jeopardy argument advanced on appeal was waived where the appellant had urged a different double jeopardy argument in the court below. If sound, and if applicable to the circumstances of this case, *Perez* would indicate that Siniscalchi did waive his double jeopardy claim. The two cases cited to us by Siniscalchi's counsel, however, make waiver in this case less than certain. Although perhaps distinguishable on their facts, *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), and *Menna v. New York,* 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) indicate that the right not to be haled into court twice for the same offense is a fundamental one, so important that it cannot be waived by a guilty plea to a second charge. *Perez* was decided after *Blackledge* and *Menna,* but it does not distinguish them and those cases were not called to the panel's attention. Both of those cases dealt with double jeop-

---

**3.** The motion referred to is the motion made immediately after the mistrial was declared at the first trial, and denied immediately prior to the start of the second trial. Somewhat incon-

sistently, however, the evidence discussed in Siniscalchi's brief was that developed at the second trial.

ardy in the context of a guilty plea to a second charge; it is far from clear what import they carry for double jeopardy claims arising out of a mistrial and subsequent retrial on the same charge. Fortunately, however, we need not decide the troubling questions that these cases present,[4] for we find that Siniscalchi's double jeopardy claim, even assuming it was not waived, lacks merit.

■ Retrial after a properly declared mistrial does not violate the double jeopardy clause, *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); the issue here, therefore, is whether the mistrial was properly declared. No claim is made that in declaring the mistrial the trial judge acted in bad faith, hastily, or arbitrarily. Nor could such a claim be plausibly asserted in view of the facts that the jury had deliberated for most of three full days, that it had requested and received several additional instructions on the conspiracy count, that it had already decided 24 of the 25 counts in the indictment, that the trial judge had denied two motions by a co-defendant for a mistrial, that a modified Allen charge had not produced a verdict, that the jury had obviously made a conscientious effort at reaching unanimity and had several times indicated by note its inability to do so, and that prior to the mistrial, Siniscalchi's attorney agreed with the court that it was appropriate to discharge the jury.

Interpreted most favorably to Siniscalchi, his argument is that before declaring a mistrial the judge should have asked the jury whether it had reached a verdict on the conspiracy count as to any of the four defendants. Siniscalchi's attorney had twice requested such an inquiry; MacQueen's attorney had objected to the second request. Both requests were denied by the court because the nature of the jury's questions indicated they knew they could render a verdict as to any one defendant and that

the jury had indicated "quite a bit of sensitivity to that particular point."

■ Unquestionably, before declaring a mistrial and dismissing a hung jury, a trial judge may properly inquire whether the jury has reached a partial verdict with respect to any of the defendants or any of the counts. *See* F.R.Cr.P. Rule 31; *United States v. Hockridge*, 573 F.2d 752, 756–59 (2d Cir.), cert. denied, —— U.S. ——, 99 S.Ct. 85, 58 L.Ed.2d 112 (1978); *United States v. Cotter*, 60 F.2d 689 (2d Cir. 1932). But such an inquiry is not required where, as here, the trial judge has already given clear instructions on the point.[5] A trial judge is not obligated to repeat adequate instructions, *United States v. Bayer*, 331 U.S. 532, 536, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947); *United States v. Cardarella*, 570 F.2d 264, 267 (8th Cir.), cert. denied, 435 U.S. 997, 98 S.Ct. 1651, 56 L.Ed.2d 87 (1978); *United States v. Clark*, 506 F.2d 416, 418 (5th Cir.), cert. denied, 421 U.S. 967, 95 S.Ct. 1957, 44 L.Ed.2d 454 (1975); it follows that he is not required to inquire behind an announced deadlock on the assumption that the jurors have misunderstood his instructions. This is particularly so where, as here, such an inquiry is opposed by a co-defendant. In such circumstances the trial judge's discretion should not be disturbed. Nor should we adopt a *per se* rule that a mistrial is improperly declared whenever the trial judge fails to specifically inquire as to the possibility of a partial verdict. As we have recently stated, "*per se* rules are inappropriate in the mistrial context, and every case turns on its own facts." *Drayton v. Hayes*, 589 F.2d 117, 122 (2d Cir. 1979). It thus appears that the judge acted within his discretion in declaring a mistrial.

■ Finally, we recognize that a mistrial should not be declared over a defendant's objection unless the record demonstrates that the action was a "manifest necessity."

4. *See United States v. DeFillipo*, 590 F.2d 1228 at 1233 (2d Cir. 1979).

5. At oral argument Siniscalchi's counsel conceded that Judge Sifton's instructions on this point were adequate. His concession is well grounded in the record since the point was covered not only in the initial charge, but also in response to the jury's requests for clarification.

*Arizona v. Washington,* 434 U.S. 497, 505, 516–17, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). The colloquy quoted above indicates that appellant's counsel made no clear objection to a mistrial. Nevertheless, we have, perhaps in an excess of caution, taken note of our cases that require that the trial court consider simple and obvious alternatives to the declaration of a mistrial, when the defendant objects, and that the basis of such alternatives be demonstrated by statements of the court or by the record. See *United States v. Klein,* 582 F.2d 186, 194–95 (2d Cir. 1978), cert. denied, —— U.S. ——, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979); *Dunkerley v. Hogan,* 579 F.2d 141 (2d Cir. 1978), cert. denied, —— U.S. ——, 99 S.Ct. 872, 59 L.Ed.2d 56 (1979); *United States v. Grasso,* 552 F.2d 46 (2d Cir. 1977), vacated and remanded for further consideration, 438 U.S. 901, 98 S.Ct. 3117, 57 L.Ed.2d 1144 (1978). We find adequate basis for the trial court's decision to declare a mistrial here. The court explained that the jury was already aware that it could reach a verdict with respect to only one defendant and the record demonstrates that this was so. Given the earlier adequate instruction, we do not think it was necessary for the court to repeat it prior to determining that a mistrial was justified by "manifest necessity."

■ Counsel's only other attack is based on his affidavit as to the post-trial statements of several jurors, offered to impeach the announced deadlock, but these statements cannot be considered by the court. We have found only one federal case in which a party sought to impeach a jury's deadlock (as opposed to a verdict): *McKay v. Raines,* 405 F.Supp. 363 (D.Kan.1975). There, the habeas corpus petitioner argued, *inter alia,* that his conviction at a second trial violated the double jeopardy clause because the jurors at the first trial had secretly acquitted him, though they had announced in open court that they were deadlocked. The court dealt with this argument as follows:

> "McKay has offered jurors' affidavits which tend to refute the announcement in court by the first jury panel that they could not reach a verdict in his case. The law is fairly well settled that jurors are not competent to impeach a verdict once it is returned when the facts sought to be established essentially inhere in the verdict itself. *Gafford v. Warden,* 434 F.2d 318 (10th Cir. 1970). Juror's affidavits can serve only to show that the jury may have been subjected to unauthorized contacts outside the courtroom by persons or media. *Id.* The court then may consider jurors' statements to determine whether the jury was improperly influenced in reaching their verdict. In McKay's case the jury was given ample opportunity to inform the court of the status of their deliberations. Instead, each juror unequivocally stated that there was no possibility a verdict could be reached. Although this decision on their part does not amount to a verdict as such, we believe that *Gafford v. Warden* applies. McKay's contentions are not limited to a complaint that the jurors were improperly influenced by outside contacts. Rather, he seeks to establish that the decision they announced was not wholly correct and requires supplementation. We do not feel that this is a proper function of jurors' affidavits under the *Gafford* rule." *Id.* at 365.

*McKay* holds that the principles governing impeachment of verdicts apply as well to impeachment of deadlocks. We agree. In cases involving impeachment of verdicts, the courts have accepted juror testimony as to impermissible outside influences, but have consistently refused to consider statements by jurors relating to the mental processes of their deliberations. *United States v. Green,* 523 F.2d 229, 235 (2d Cir.), cert. denied, 423 U.S. 1074, 96 S.Ct. 858, 47 L.Ed.2d 84 (1976); *United States v. Stacey,* 475 F.2d 1119, 1121 (9th Cir. 1973). Thus, the post-trial statements of jurors reported in counsel's affidavit cannot be considered in determining Siniscalchi's double jeopardy claim.

## CONCLUSIONS

There was substantial evidence to support Siniscalchi's conviction for conspiracy. As-

84

suming, but not deciding, that his double jeopardy objections were not waived by failing to assert them before the start of the second trial, we conclude that they are without merit because the mistrial was properly declared. The judgment convicting Siniscalchi of conspiracy is, therefore, affirmed.