**In re Harold E. FORD, Petitioner (91–5497).**

**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Harold E. FORD, Douglas Beaty, Karl A. Schledwitz, and David Crabtree, Defendants–Appellants (91–5548).**

**Nos. 91–5497, 91–5548.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 18, 1992.

Decided March 2, 1992.[*]

\* This decision was originally issued as an "unpublished decision" filed on March 2, 1992. A request for rehearing by petitioner was denied on April 24, 1992, and a petition for writ of certiorari was denied on October 5, 1992. *Ford v. United States,* —— U.S. ——, 113 S.Ct. 180, 121 L.Ed.2d 126 (1992).

J. Alan Hanover, Hanover, Walsh, Jalenak & Blair, Memphis, TN, William E. McDaniels (argued), Brent J. Gurney, Williams & Connolly, Washington, DC, for Harold E. Ford.

Odell Horton, pro se.

Ed Bryant, U.S. Atty., Memphis, TN, Daniel Clancy, Asst. U.S. Atty., Jackson, TN, Gary Humble, Asst. U.S. Atty. (argued), Chattanooga, TN, for U.S.

Steven R. Ross (briefed), U.S. House of Representatives, Office of the Clerk, Washington, DC, for amicus curiae The Speaker and Bipartisan Leadership Group of the U.S. House of Representatives.

Eric Schnapper (briefed), NAACP Legal Defense & Educational Fund, New York City, for amicus curiae N.A.A.C.P.

Albert C. Harvey, Thomason, Hendrix, Harvey, Johnson & Mitchell, Memphis, TN, Ann C. Short, Herbert S. Moncier, Knoxville, TN, for Douglas R. Beaty.

Kemper B. Durand (briefed), Albert C. Harvey, Thomason, Hendrix, Harvey, Johnson & Mitchell, Memphis, TN, for Karl A. Schledwitz.

Anthony Philip Lomonaco, Vaughan & Zuker, Knoxville, TN, Albert C. Harvey, Thomason, Hendrix, Harvey, Johnson & Mitchell, Memphis, TN, for David A. Crabtree.

Julius L. Chambers, NAACP Legal Defense Fund, Eric Schnapper (briefed), NAACP Legal Defense & Educational Fund, Barrington D. Parker, Claire Silberman, Morrison & Foerster, New York City, for amicus curiae N.A.A.C.P., NAACP Legal Defense and Educational Fund, Inc.

Before: MARTIN and MILBURN, Circuit Judges; and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Defendants appeal an order denying their motion to dismiss criminal charges on grounds of double jeopardy, arguing that the district court erred in granting a mistrial. Defendant Harold Ford also seeks mandamus review of an order directing jury selection for his retrial take place in a city other than the site of his retrial, and the propriety of the district court's consideration of an FBI affidavit outlining evidence of juror misconduct.

I.

Four defendants, Douglas Beaty, Karl S. Schledwitz, David Crabtree and Congressman Harold E. Ford, were charged in a

nineteen count indictment with conspiracy, bank fraud and mail fraud. The allegations of the indictment allege, among other things, that the defendants conspired to defraud the trustee in bankruptcy for the Southern Industrial Banking Corporation ("SIBC"). The indictment also alleges that an ongoing pattern of "loans" were made from SIBC to Ford, with no expectation of repayment.

This case was investigated by a grand jury sitting in Memphis, the Western District of Tennessee. However, the case was actually presented to the grand jury in Knoxville, in the Eastern District of Tennessee. The government maintained that Knoxville was the only site where venue existed for all charges. However, three of the four defendants were from Memphis, and so, defendants argued that venue properly rested there. Upon indictment by the Knoxville grand jury, Ford began to speak out against the government's handling of the case. Ford alleged that the indictment was sought in Knoxville rather than in Memphis to deprive him of a fair trial. The district court entered a gag order limiting Ford's comments, which was subsequently reversed on appeal by this court. *United States v. Ford*, 830 F.2d 596 (6th Cir.1987).

Subsequently, in response to defense motions, the United States Magistrate in Knoxville recommended that under Fed. R.Crim.P. 21(b), the defendants were entitled to transfer the case from the Eastern District to the Western District of Tennessee. The United States appealed the transfer order, but the district court affirmed. Accordingly, the case was transferred to Memphis.

The United States then filed a motion in the Memphis district court to have the case transferred outside of the Memphis area, which was, the government contended, subject to pretrial publicity to such a degree that a fair trial would be impossible. The district court judge denied the motion, concluding that the jury pool would include jurors from counties outside of Memphis, which was the primary target of the pretrial publicity. The district court specifically ruled out Jackson, Tennessee, in the Eastern Division of the Western District, because a highly publicized trial had recently occurred there. The court expressed its confidence that a fair jury trial could be conducted in Memphis, despite the fact that Congressman Ford had generated much publicity there and was a popular local figure.

The venue of the case having been settled, the case proceeded. Trial finally commenced on February 12, 1990. The United States presented evidence from March 1, 1990 through March 15, 1990 and from March 19, 1990 through April 12, 1990. The defendants put on no testimony.

When the case was ready for closing arguments one of the jurors failed to appear. When he later appeared he explained that he had been arrested the prior night on a traffic charge. Further questioning revealed that he had at least one prior arrest even though he had stated on the jury questionnaire that he had never been arrested. This juror was excused, and an alternate juror was appointed.

Closing arguments were then made, and the case was submitted to the jury on Tuesday, April 24, 1990. On the second day of deliberations, Wednesday, April 25, 1990, the jury requested the trial transcript, but since no transcript was available, the jury was informed that it would take 30 days to prepare. Later this second day, the jury announced that it was ready to return a verdict. The court instructed the foreman to read the verdict to the court. The foreman read: "[Counts] One, Five, Six, Seven and Eight, we have four guilty and eight not guilty." Joint Appendix at 318. In addition, the foreman stated "at this particular time the jury is in a hopeless deadlock as far as coming back with a verdict." *Id.*

In response, the court stated "I don't know what else you can do but they just have to go back and start over again, and I'm not going to let them come back after a short time and tell us that they are hopelessly deadlock[ed]." *Id.* at 319. The court then ordered the jury to resume deliberations on the following day.

On Thursday, April 26, the jury requested the trial testimony of seven witnesses,

rather than the testimony of all the witnesses as was requested earlier. The court informed the jury that this could take two weeks to prepare, but that some transcripts could be prepared sooner.

On the next morning, Friday, April 27, the government moved to bring to the attention of the court prior undisclosed convictions of one of the jurors. The jury was adjourned early, but prior to leaving provided a note to the court which stated:

> The majority of the jury has voted by secret ballot (9–3) that it cannot reach a guilty or not guilty verdict without violence to individual judgment.

A hearing was then held, and the juror admitted that she had been convicted of two prior felonies, but did not admit to them on the jury questionnaire. She was dismissed.

The court then returned to the question of the jury's deadlock. The court asked the foreman to explain, and he replied that the jury was hopelessly deadlocked, and there was no chance of reaching a verdict without violence to individual judgment. The judge polled the jury, and all jurors agreed that a hopeless deadlock had been reached.

The defense requested that the jury be sent back for further deliberations, that the court read the jury a modified *"Allen* charge", and that the jury be instructed that it could return a partial verdict or verdicts as to one or several defendants. After considering each alternative, the court held that the jury deadlock made it manifestly necessary for it to declare a mistrial. Secondarily, the district court justified its decision to declare a mistrial based on prior juror misconduct, allegations of improper juror contact, and attempts to influence the jury.

Following the declaration of a mistrial an FBI investigation was conducted which included interviews of all jurors and other witnesses. The affidavit of the special agent conducting this investigation indicated that in addition to the problems associated with the two dismissed jurors, another juror had slept in the jury room, had received news information about the case during a break in deliberations, and had been approached by two women who tried to influence her. The foreman of the jury declined to answer, on the advice of his attorney, whether he had made up his mind prior to deliberations and whether he thought the case was nothing but a vendetta against Ford.

Following this investigation, the United States made a "Motion for Protection of the Integrity of the Jury Process," pointing out problems with the first trial and asking that precautions be taken to avoid the same problems in the second trial. The government proposed various alternatives, including a more detailed voir dire, sequestration of the jury, and transfer within the district. In the intervening period, the defendants moved for dismissal of the indictment on the grounds that there was no basis to declare a mistrial, and that retrial would violate the defendants' rights under the double jeopardy clause.

On April 10, 1991, the district court issued an order denying defendants' motion to dismiss the indictment on double jeopardy grounds. In response to the government's motion, the district court directed that the selection of jurors would take place in Jackson, Tennessee, in the Eastern Division of the Western District. After the jurors were selected, however, the trial itself would resume in Memphis. From this order the defendants have appealed the propriety of the mistrial and Congressman Ford has filed a petition for a writ of mandamus seeking review of the district court's order to transfer jury selection to the Eastern Division.

## II.

Defendants appeal the district court's denial of their motions to dismiss the indictment against them on the grounds of double jeopardy.[1] They assert that the

---

**1.** As an initial matter, we conclude that our jurisdiction is proper under 28 U.S.C. § 1291. Although the district court's declaration of a mistrial and denial of the motion to dismiss the indictment is not a final judgment appealable under 28 U.S.C. § 1291, the Supreme Court has

district court's declaration of a mistrial over their objections was not supported by manifest necessity because the district court did not consider all the available alternatives prior to granting the mistrial.

This court reviews de novo a district court's denial of a motion to dismiss an indictment on the grounds of double jeopardy. *United States v. Goland,* 897 F.2d 405, 408 (9th Cir.1990). In so doing, we look to the record of the initial trial. *United States v. Cameron,* 953 F.2d 240, 243 (6th Cir.1992).

The Fifth Amendment prohibition against placing a defendant "twice in jeopardy" reflects a constitutional policy of finality for a defendant's benefit in all criminal proceedings. *See United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (plurality opinion). The Supreme Court has stated that the Double Jeopardy Clause grants a defendant the "valued right to have his trial completed by a particular tribunal." *Jorn,* 400 U.S. at 484, 91 S.Ct. at 557. However, the Double Jeopardy Clause is not an absolute bar to retrial in every case. In some situations, a defendant's right to have his case resolved by a particular tribunal is subordinate to the larger interest of the public in "fair trials designed to end in just judgments." *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949).

When a mistrial is declared over the objections of the defendants, reprosecution is not barred where a "manifest necessity" exists to declare a mistrial in the initial prosecution. *United States v. Sanford,* 429 U.S. 14, 15–16, 97 S.Ct. 20, 21–22, 50 L.Ed.2d 17 (1976) (per curiam). Manifest necessity has been defined as a "high degree" of necessity. *Arizona v. Washington,* 434 U.S. 497, 506, 98 S.Ct. 824, 831, 54 L.Ed.2d 717 (1978). A determination of whether "manifest necessity" exists depends upon the facts of the particular case.

*Jones v. Hogg,* 732 F.2d 53, 55 (6th Cir. 1984).

It is within a district court's sound discretion to declare a mistrial. *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824); *Hogg,* 732 F.2d at 56. A trial judge's decision to declare a mistrial when he considers the jury to be deadlocked is accorded great deference by a reviewing court since the trial court is in the best position to assess whether the jury can reach a just verdict if it continues to deliberate. *United States v. Jenkins,* 902 F.2d 459, 469 (6th Cir.1990).

This court has set forth several factors which must be considered in determining whether a trial court abused its discretion in declaring a mistrial. These factors include: (1) a timely objection by the defendant, (2) the jury's collective opinion that it cannot agree on a verdict, (3) the length of the jury deliberations, (4) the length of the trial, (5) the complexity of the issues presented to the jury, (6) any proper communication which the judge has with the jury, (7) the effects of possible exhaustion and the impact which coercion of further deliberations might have on the verdict, and (8) the trial judge's belief that additional prosecutions will result in continued hung juries. *Hogg,* 732 F.2d at 56.

Defendants correctly point out that the district court is required to consider other possible alternatives before declaring a mistrial. *Id.* at 56, n. 1. These included the option to give the jury an *Allen* charge and require it to further deliberate, to allow the jury to simply continue deliberating with eleven persons, to instruct the jury that it could bring a partial verdict as to any of the defendants, or to require the jury to keep deliberating until the transcripts it requested could be provided. The district court listened to defendants' arguments in favor of each of these alternatives and rejected each alternative.

held that a denial of a defendant's motion to dismiss an indictment on double jeopardy grounds is "appealable as a 'collateral order' under 28 U.S.C. § 1291." *Richardson v. United States,* 468 U.S. 317, 320, 104 S.Ct. 3081, 3083, 82 L.Ed.2d 242 (1984). Because a double jeop-

ardy claim challenges "the very power of the Government to bring a person to trial," that "right would be significantly impaired if review were deferred until after trial." *Id.* Therefore, we may properly consider the merits of appellants' double jeopardy claims.

Because the refusal to declare a mistrial after the jury becomes deadlocked raises the possibility that the resultant verdict was coerced, a trial judge acts within his sound discretion in rejecting possible alternatives and granting a mistrial if reasonable judges could differ about the proper disposition. *Fay v. McCotter*, 765 F.2d 475, 478 (5th Cir.1985).

■ Defendants argue that the trial court erred in not giving an *Allen* charge to the jury. However, the jury had deliberated for four days. This followed a trial lasting approximately twenty days. At the point in time that the district court rejected the *Allen* charge, the jury had twice indicated it was hopelessly deadlocked and unable to reach a verdict. The first indication of deadlock came two days earlier. On that occasion the trial judge told the jury that it was too early for them to declare a deadlock and sent the jury back for further deliberations. After two additional days of deliberations, the district judge was well within the bounds of its discretion in refusing to give the requested *Allen* charge because of the possibility of coercion. *United States v. Sawyers*, 902 F.2d 1217, 1220 (6th Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 2895, 115 L.Ed.2d 1059 (1991).

In addition, when the jury first indicated to the judge that it was deadlocked, it disclosed to the judge that the split in the jury was eight to four in favor of acquittal. Moreover, during deliberations one of the jurors was excused because she had falsely filled out the jury questionnaire and was ineligible to serve on the jury, and the trial judge heard evidence suggesting that there had been improper contact with the jury.

In *United States v. Lash*, 937 F.2d 1077 (6th Cir.), *cert. denied*, — U.S. ——, 112 S.Ct. 397, 116 L.Ed.2d 347 (1991), we upheld the giving of an *Allen* charge to the jury. We held that where the judge learned of the numerical split among the jury, but did not know whether the majority of the jurors favored conviction or acquittal, the *Allen* charge was not coercive where it instructed each side to reconsider its position. *Id.* at 1086. In this case,

however, the district judge knew the numerical split as well as the fact that the majority favored acquittal. Moreover, the district judge had just excused one juror, and he would have given the *Allen* charge in an atmosphere where he had good reason to believe that improper contact with the jury had taken place. Given this situation, we conclude that the district judge did not abuse his discretion in refusing the *Allen* charge.

■ The defendants also argue that the district court could have given the jury an instruction, pursuant to Fed.R.Crim.P. 31(b), that it could return a partial verdict as to any of the individual defendants in this case. However, the record shows that after the jury announced for the second time that it was deadlocked, the district court examined the jury's verdict forms at the request of all the defendants. These verdict forms showed that the jury had not reached a unanimous verdict as to any of the defendants or as to any of the charges. It was only at that point in time, after the district court was aware that the jury had not, in fact, reached any unanimous verdict as to any charge that the district court refused the requested instruction.

Moreover, as pointed out by the court at that time, its initial instructions to the jury did include an instruction that the jury could return a partial verdict. Before declaring a mistrial and dismissing a hung jury, a trial judge may inquire whether the jury has reached a partial verdict with respect to any of the defendants or any of the charges, but such an inquiry is not required where the trial judge has already given clear instructions on the point. *United States v. MacQueen*, 596 F.2d 76, 82 (2d Cir.1979). "A trial judge is not obligated to repeat adequate instructions." *Id.* (citing *United States v. Bayer*, 331 U.S. 532, 536, 67 S.Ct. 1394, 1396, 91 L.Ed. 1654 (1947)). Accordingly, in light of the totality of the circumstances of this case, we hold that the district court did not abuse its sound discretion in refusing to give the supplemental instruction under Fed. R.Crim.P. 31(b).

■ Finally, defendants argue that the district court should have allowed the jury

to continue its deliberations until it received the transcripts it requested and that it should have allowed the jury to deliberate with only eleven jurors. However, each of these proposed alternatives would have required the judge to send the jury back for further deliberations in an atmosphere which could have resulted in a coerced verdict. The transcripts would not have been available for two weeks. To force the jury to deliberate throughout that period would be inherently coercive. Likewise, an eleven member jury would have been subject to the same coercive influence that would have affected a twelve member jury. Therefore, we believe that the district court did not abuse its sound discretion in ordering a mistrial in spite of these alternatives.

For the reasons stated, the district court was within its sound discretion in determining that "manifest necessity" was present for declaring a mistrial in this case. Since "manifest necessity" was present for the declaration of the mistrial, the Double Jeopardy Clause does not bar retrial of the defendants. Therefore, the district court did not err in denying the defendants' motion to dismiss the indictment against them.

### III.

Petitioner Harold E. Ford seeks a writ of mandamus directing the district court to vacate its post-trial order directing that jury selection for the retrial take place in the Eastern Division of the Western District of Tennessee at Jackson. Petitioner also seeks review, in his petition for a writ of mandamus, of the propriety of the district court's decision to consider an FBI affidavit summarizing the investigation of juror misconduct during the first trial. For the reasons that follow, we hold that mandamus is not the appropriate procedure by which to remedy any errors which may have occurred in this case.

■ This court has the power to issue a writ of mandamus pursuant to the All Writs Statute, 28 U.S.C. § 1651. *See In re Benedectin Products Liability Litigation,* 749 F.2d 300, 303 (6th Cir.1984). However, the remedy of mandamus is a drastic one, to be invoked only in extraordi-

nary situations. *Kerr v. United States District Court,* 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976). The writ "has traditionally been used in the federal courts only 'to confine an inferior court to a lawful exercise of its authority when it is its duty to do so.'" *Id.* (citing *Will v. United States,* 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967)). Thus, only exceptional circumstances amounting to a "judicial usurpation of power" will justify the invocation of this extreme remedy. *Id.* 426 U.S. at 402, 96 S.Ct. at 2123.

As a means of implementing the rule that the writ will issue only in extraordinary circumstances, the courts have imposed two conditions which must precede its issuance. First, "the party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires." *Id.* at 403, 96 S.Ct. at 2124. Secondly, the petitioner must demonstrate that his right to issuance of the writ is "clear and indisputable." *Id.* The issuance of the writ lies within the discretion of the court to which the petition is addressed. *Id.*

■ Although a writ of mandamus should not generally be used to review the discretionary decisions of trial courts, *Platt v. Minnesota Mining & Mfg. Co.,* 376 U.S. 240, 245, 84 S.Ct. 769, 772, 11 L.Ed.2d 674 (1964), the writ may be issued where the trial court's actions amount to a clear abuse of discretion. *Will,* 389 U.S. at 104, 88 S.Ct. at 278; *Lemon v. Druffel,* 253 F.2d 680 (6th Cir.), *cert. denied,* 358 U.S. 821, 79 S.Ct. 34, 3 L.Ed.2d 62 (1958).

■ Petitioner argues that the district court's intradistrict transfer order is cognizable on mandamus because: (1) the district judge had no authority to transfer jury selection under Fed.R.Crim.P. 18; and (2) the transfer order, which was based on racial considerations, constituted an abuse of discretion. We do not believe that either of these reasons justify the extraordinary remedy of mandamus in the present case.

■ First, petitioner has not demonstrated that it was clear and indisputable that the district court lacked authority under Rule 18 to transfer the jury selection

phase of the retrial to Jackson. We believe that the district court has the authority to order an intradistrict transfer in cases like the present one. *United States v. Balistrieri,* 778 F.2d 1226 (7th Cir.1985), *cert. denied,* 477 U.S. 908, 106 S.Ct. 3284, 91 L.Ed.2d 573 (1986); *United States v. Lewis,* 504 F.2d 92, 96–98 (6th Cir.1974), *cert. denied,* 421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466 (1975). Whether the district court properly ordered a transfer in this case is a matter addressed to the district court's discretion. We do not believe that petitioner has met his burden of showing that the district court's action amounted to a clear abuse of discretion or that the order was "clearly erroneous as a matter of law." · *In re Benedectin,* 749 F.2d at 304.

Secondly, petitioner has wholly failed to demonstrate that he has no adequate alternative means of relief. Assuming that the retrial results in a verdict unfavorable to petitioner, we believe that his right to appeal from that final judgment will adequately safeguard petitioner's interests. At that time, petitioner can raise the issue of whether the district court abused its discretion in transferring the jury selection phase of his retrial to Jackson. We are unable to discern any extraordinary consequences which would flow from our requirement limiting petitioner to this normal avenue of relief, and therefore hold that the issuance of a writ of mandamus is not appropriate in the present case. Because the petitioner has failed to meet this two-part threshold requirement, we need not further consider the merits of the underlying dispute. Rather, those are matters which are best left to be resolved, if necessary, by the court on appeal.

■ Furthermore, we find that petitioner's challenge to the district court's reliance on an FBI affidavit concerning certain juror misconduct which occurred at the first trial is not properly before us on mandamus review. Mandamus review has been found to be an appropriate exception to the final judgment rule only where the issuance of the writ in aid of appellate jurisdiction "has been to confine an inferior court to a lawful exercise of its prescribed

jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Kerr,* 426 U.S. at 402, 96 S.Ct. at 2123. "The writ cannot be issued to compel the court to decide a matter before it in a particular way," or to review judicial action taken in the exercise of legitimate jurisdiction. *In re Rice,* 155 U.S. 396, 403, 15 S.Ct. 149, 152, 39 L.Ed. 198 (1894); *In re Aetna Casualty Co.,* 919 F.2d 1136, 1140 (6th Cir.1990). Because the district court had jurisdiction in this case, we are without authority to review the merits of its decision to consider the FBI affidavit under the guise of mandamus review. In the present posture of this proceeding, there is nothing we can direct the lower court to do, or not to do, as it has already acted. We therefore view petitioner's request as one which is cognizable only by a court on appeal. As such, petitioner should raise this issue, along with the others, on appeal after final judgment.

### IV.

For the reasons set forth above, the district court's order denying defendants' motion to have the indictment against them dismissed on the ground of double jeopardy is AFFIRMED and the petition for a writ of mandamus is DENIED.