**UNITED STATES of America, Appellant,**

v.

**Luis CASTELLANOS, Appellee.**

**No. 680, Docket 72-2337.**

United States Court of Appeals, Second Circuit.

Argued April 10, 1973.

Decided May 4, 1973.

Paul M. Bergman, Asst. U. S. Atty. (Robert A. Morse, U. S. Atty., E. D. New York, L. Kevin Sheridan, Asst. U. S. Atty., of counsel), for appellant.

Frank T. Geoly, Fontana & Geoly, Brooklyn, N. Y., for appellee.

Before SMITH, HAYS, and TIMBERS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

This appeal presents a single substantive question—may a district court order the dismissal of an indictment on grounds of double jeopardy solely because two previous trials of an accused have resulted in deadlocked juries? Judge Dooling answered that question in the affirmative, and ordered the indictment against Luis Castellanos dismissed, 349 F.Supp. 720. For the reasons below, we reverse.

The relevant facts may be quickly stated. The underlying indictment al-

leges a conspiracy to sell cocaine. The main government witness at both trials was Horace D. Balmer, a New York City undercover detective, who testified about appellee's involvement in the alleged conspiracy. At each trial, the defense was presented wholly through the testimony of the defendant himself, who denied any narcotics dealings, and a number of character witnesses. The first jury was discharged after it deadlocked 11 to 1 for conviction; the second after it split 7 to 5 for acquittal.

After the second mistrial, appellee moved for a judgment of acquittal pursuant to Rule 29(c), Fed.R.Crim.P., and "for such other and further relief as to this Court may seem just and proper." Judge Dooling, in a written memorandum, denied the motion for acquittal, noting that there "was unmistakably an issue for the jury to resolve." However, concluding that he had the power to grant a motion to dismiss where there had been two previous jury disagreements and the record indicated no special circumstances contributing thereto in either trial, Judge Dooling ordered the indictment dismissed on grounds of double jeopardy. It is this order from which the government appeals.

### I.

At the outset, appellee confronts us with a claim that we lack jurisdiction over the appeal. He bases his argument upon the language of 18 U.S.C. § 3731, which provides:

> "In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution."

Castellanos contends that since Judge Dooling held that further prosecution was barred by the Double Jeopardy Clause, the statute forbids appeal.

We cannot accept appellee's argument, which would have the effect of making the district courts the final arbiters of the constitutional meaning of the Clause. An order such as the one here, dismissing an indictment on grounds of double jeopardy prior to the impaneling of a new jury, was clearly appealable under the predecessor to the present § 3731. United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). Nothing in either the legislative history or the language of the new statute, Pub.L. 91–644, Title III, § 14(a), 84 Stat. 1890, indicates the slightest intention to cut back the scope of former § 3731. Indeed, quite the opposite seems true, for the statute was described as designed to eliminate "technical distinctions in pleadings as limitations on appeals by the United States," Conference Rep. No. 91–1768, 91st Cong., 2d Sess.; 1970 U.S.Code Cong. & Admin.News at 5848, and the text of the law itself instructs us that its "provisions shall be liberally construed."

The reference to the Double Jeopardy Clause in the statute, rather than barring appeal in a case like this, seems designed to meet the unrelated problem posed by the Supreme Court's interpretation of the old Criminal Appeals Act in United States v. Sisson, 399 U.S. 267, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970). There, the Court construed a provision that allowed appeals "From the decision or judgment sustaining a motion in bar, where the defendant has not been put in jeopardy,"

> ". . . as confining the Government's right to appeal . . . to situations in which a jury has not been impaneled, even though there are cases in which a defendant might constitutionally be retried if appeals were allowed after jeopardy had attached." Id. at 302–303, 90 S.Ct. at 2137.

The Court explicitly rejected Mr. Justice White's position that the statutory language merely restated the prohibition of the Fifth Amendment, holding instead that the statute forbade appeals

from rulings made after jeopardy *attached,* regardless of whether or not retrial would have been constitutionally barred after appellate review. *Id.* at 304–306, 90 S.Ct. 2117.[1]

The new statute was apparently aimed at this dilemma, seeking to make the government's right to appeal coextensive with its ability to retry the defendant if its arguments on the merits should prevail on review. *Id.* at 306–307, n. 61, 90 S.Ct. 2117. But of course, the government's ability to retry Castellanos is precisely what is at issue here. At worst then, we lack jurisdiction and must dismiss only if Judge Dooling's ruling is correct, and conversely, if the order below is in error, we have jurisdiction and must reverse. In short, the question of our jurisdiction is bound up with the merits, and it is to these that we now turn.

## II.

As the Supreme Court has recently reminded us in Illinois v. Somerville, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973), the "fountainhead decision construing the Double Jeopardy Clause in the context of a declaration of a mistrial" is United States v. Perez, 9 Wheat. (22 U.S.) 579, 6 L.Ed. 165 (1824). In that case, speaking for a unanimous Court, Mr. Justice Story held that where a jury is properly discharged for failure to agree upon a verdict and a mistrial declared, the defendant may be put to a new trial without violating the Double Jeopardy Clause:

> "We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, when-

ever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; *and it is impossible to define all the circumstances, which would render it proper to interfere."* *Id.* at 580

This "manifest necessity" standard has been "consistently adhered to," *Somerville, supra,* 410 U.S. 458, 93 S.Ct. 1066, by the Supreme Court in the nearly one hundred and fifty years since *Perez.* Thus, the essential question in each case involving double jeopardy contentions after the declaration of a mistrial has been whether the trial judge abused his discretion in terminating the trial short of verdict. If so, retrial is barred. As might be expected, since trial judges may declare mistrials for a variety of reasons, the inquiry is a factual one, and the Supreme Court has often sharply divided on the issue of whether a particular mistrial declaration meets the "manifest necessity" standard. *See, e. g.,* Wade v. Hunter, 336 U.S. 684, 69 S.Ct. 834, 93 L. Ed. 974 (1949); Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961); Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); United States v. Jorn, *supra;* Illinois v. Somerville, *supra.* But at least two common threads run through all these cases: the recognition that the *Perez* doctrine defines the parameters of analysis, and the agreement that the "classic example" of "manifest necessity" is the discharge of a genuinely deadlocked jury. *Downum, supra,* 372 U.S. at 736, 83 S.Ct. 1033.

---

1. The distinction may be illustrated by the following hypothetical. Assume that after a jury was impaneled, the trial court declared a mistrial because he thought the day too sunny to spend indoors. Surely, if the order were appealable, a reviewing court would have little difficulty finding it in error. Yet a defendant might well contend that retrial was barred by the Fifth Amendment, since jeopardy had attached upon impaneling of the jury and there was no "manifest necessity" for dec-

laration of a mistrial. See the discussion in Part II, *infra.*

Under the prior § 3731, the Fifth Amendment question would be irrelevant, for *Sisson* held appeals to be barred by the *attaching* of jeopardy, i. e., the impaneling of the jury. Under Mr. Justice White's interpretation (and present § 3731), the Fifth Amendment question would have to be resolved to determine appealability—if retrial was barred, the appeal should be dismissed, if not, jurisdiction existed to reverse the order.

Had Castellanos here claimed that one or both of the mistrials were improperly declared, his double jeopardy claim would be within the analytical framework of the "manifest necessity" formulation. *Perez* warns that such mistrials should be declared only "with the greatest caution, under urgent circumstances, and for very plain and obvious causes," 9 Wheat. (22 U.S.) at 580. If it appeared here that there was no "manifest necessity" for the mistrials—that the trial judge acted too quickly, or that it seemed that the jury was not really deadlocked—we might well be able to hold that the Double Jeopardy Clause barred retrial. But such is not the case here. Judge Dooling noted, and neither side disagrees, that the jury deadlocks were genuine, and that there was no sense in leaving the case in either panel's hands any longer. Indeed, Castellanos does not appear to have objected to either mistrial declaration.

Thus, since each mistrial here concededly met the "manifest necessity" test, any claim of double jeopardy would appear to be barred by *Perez* and its progeny. Judge Dooling attempted to distinguish *Perez,* however, on the ground that but one mistrial was there involved. He noted that the Double Jeopardy Clause is designed not only to protect against double punishment, but also against the risk of multiple trials for a single offense. Price v. Georgia, 398 U.S. 323, 326, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970). Judge Dooling recognized, as has the Supreme Court on repeated occasions, that a criminal trial represents a heavy personal strain for a defendant, and that an accused has an important interest in getting a final verdict out of the first jury he faces. *See Jorn, supra,* 400 U.S. at 479, 91 S.Ct. 547 (opinion of Harlan, J.); Green v. United States, 355 U.S. 184, 187–188, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). Since these policies behind the Double Jeopardy Clause were

threatened by the prospect of a third trial here, Judge Dooling ruled that the Fifth Amendment required dismissal.

We cannot agree. It is obvious that the defendant's interest in a final determination before the first jury he faces is not the only one here. If that were so, *Perez* would bar even the second trial, and contrary to the rule of United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896), there would be no retrials after appellate reversals. But the cases clearly recognize that the accused's right to a quick determination on the merits may in some instances be outweighed by the "ends of public justice," *Perez, supra,* 9 Wheat. (22 U.S.) at 580, or put another way, "the public's interest in fair trials designed to end in just judgments," Wade v. Hunter, *supra,* 336 U.S. at 689, 69 S.Ct. at 837.

Judge Dooling recognized this tension between the rights of the accused and the public interest, and held that the appropriate balance was struck by limiting the government to two bites at the apple, at least where it appeared that no new evidence would be introduced at a third trial. But such an approach is the kind of "mechanical application of an abstract formula" that the cases condemn. *Wade, supra,* 336 U.S. at 691, 69 S.Ct. at 838. *See also,* Illinois v. Somerville, *supra.* Indeed, the Supreme Court decisions make it clear that it is the *Perez* standard itself which embodies the appropriate balancing test—the defendant's interests bar retrial in all but those instances where there is "manifest necessity" for taking the case away from the jury. Since each mistrial was properly declared here, the Perez formulation tips the balance in the government's favor, and does not constitutionally bar retrial. *Accord,* People v. Baker, 70 Misc. 2d 986, 335 N.Y.S.2d 487 (Sup.Ct.1972). *Cf.* United States v. Berniker, 439 F.2d 686 (9th Cir.), cert. denied, 404 U.S. 938, 92 S.Ct. 277, 30 L.Ed.2d 250 (1971).[2]

2. *But see* Preston v. Blackledge, 332 F. Supp. 681 (E.D.N.C.1971), where the district court held that double jeopardy barred a retrial of state criminal defendants after four deadlocked juries. While we

doubt the correctness of the case's reasoning, it is distinguishable from the one at hand on the basis of numbers, if nothing else.

Even assuming arguendo that we could step outside the *Perez* test and invoke the Double Jeopardy Clause simply because a certain number of mistrials had occurred, we would still conclude that reversal is mandated here. If the appropriate interest of the defendant to be weighed is the avoiding of the harassment and strain of multiple prosecutions, the situation where the first and second trials end in deadlocked juries is hardly distinguishable from the case where the third trial occurs after one or more appellate reversals. Yet, in Keerl v. Montana, 213 U.S. 135, 29 S.Ct. 469, 53 L.Ed. 734 (1909), the Supreme Court has held that the Double Jeopardy Clause is not violated by retrial after a jury deadlock and an appellate reversal of a conviction. And, in United States v. Persico, 425 F.2d 1375, 1385 (2d Cir.), cert. denied, 400 U.S. 869, 91 S.Ct. 102, 27 L.Ed.2d 108 (1970), we upheld a fifth trial of several criminal defendants, following two appellate reversals and two mistrials.[3]

Moreover, to the extent that factual measurements of the strain of multiple prosecution are possible, this case does not present a particularly unhappy picture. In contrast to the *Persico* defendants, whose first trial took place in 1961 and whose fifth trial took place in 1968, appellant here was first tried in March of 1972, and retried in August of that year. Each trial took only about three days, the defendant's case rested wholly upon his own testimony and that of character witnesses, and the entire question for the jury was one of credibility. Even assuming that the Double Jeopardy Clause can in some case be invoked solely because of repeated jury disagreements— an assumption we do not here make—this is not that case.[4]

In short, while we commend Judge Dooling's sensitivity to the rights of the accused, we cannot agree with the order below. Reversed.[5]

---

3. Indeed, a tracing of the labyrinthine *Persico* proceedings indicates that at least one of the defendants, Hugh McIntosh, was tried the fifth time after *two deadlocked juries* and two reversals. The first trial on the indictment involved Carmine J. Persico, Jr., Salvatore Albanese, Ralph Spero, George LaFante, Joseph Magnasco, and McIntosh, and ended in a jury disagreement. The second trial resulted in convictions of all six; Magnasco was killed before sentencing, and we reversed the remaining convictions because of trial errors. 305 F.2d 534 (1962). The third trial ended in a mistrial on the eighth day as to Persico, Albanese, and Spero, after Persico was shot and wounded. The trial went to conclusion as to McIntosh and LaFante, but the jury disagreed. The fourth trial resulted in the conviction of all five remaining defendants, but we reversed again, for errors in the charge. 349 F.2d 6 (1965). The fifth trial again resulted in convictions of all but LaFante, whom the trial judge ordered acquitted for insufficient evidence.

So, at the end of the process, Persico, Albanese, and Spero were tried the fifth time after two appellate reversals, one deadlocked jury, and one other mistrial; McIntosh's fifth trial came after two deadlocked juries and two reversals. Thus, even if retrials after jury disagreements might somehow be distinguished from those following appellate reversals or other mistrials, at least one *Persico* defendant was retried after not only the two disagreements on which appellee bases his claim, but two reversals to boot.

4. We recognize that a strict application of the *Perez* analysis would lead to the conclusion that *any* number of retrials after jury disagreements did not violate the Double Jeopardy Clause, so long as the "manifest. necessity" doctrine was met in declaring each mistrial. However, it would still remain open for the defendant to argue that such a "trial by attrition" violated the Due Process Clause. *Cf.* United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), holding that no amount of pre-indictment delay, however large, justified dismissal under the Speedy Trial Clause, but leaving open the possibility of due process objections upon a showing of prejudice.

5. Of course, nothing we say today *requires* a third trial. The point may well have been reached in this case where the government should properly conclude that further efforts at convicting Castellanos will be unproductive, or a poor use of overburdened resources. All that we hold is that a retrial is not constitutionally prohibited.