Opinion
THE COURT.*
The People appeal from an order of the municipal court made pursuant to section 1385 of the Penal Code after the court had declared a mistrial because of the inability of the jury to reach a verdict. We are satisfied that in making the order of dismissal the trial judge acted within the authority conferred upon him by section 1385. The amended docket (see People v. Borousk, 24 Cal.App.3d 147, 156-157 [100 Cal.Rptr. 867]) shows that he considered the factors which are involved in section 1385, and no abuse of discretion appears.
A question has arisen concerning the appealability of the order of dismissal. Paragraph (a) of subdivision 1 of section 1466 of the Penal Code permits appeal by the People from an order dismissing the action “before the defendant has been placed in jeopardy,” but it is arguable that the defendant had been placed in jeopardy at the beginning of the trial, well before the order of dismissal was made. A similar question was presented in People v. Allen, 41 Cal.App.3d 821, 824-825 [116 Cal.Rptr. 493]; it was held (under the identical language of par. (8) of subd. (a) of Pen. Code, § 1238) that the People had the right to appeal an order *Supp. 10 terminating the action, on double jeopardy grounds, after a mistrial order based upon a jury deadlock. It is not clear, however, that the Allen case is controlling here.
The California courts have articulated in two different ways the rule that a defendant may be retried if the jury at his first trial is unable to reach a verdict. As it happens, the Allen case used both of these articulations. At line 13 on page 825 of the opinion, the court quoted People v. Webb, 66 Cal.2d 107, 127 [56 Cal.Rptr. 902, 424 P.2d 342, 19 A.L.R.3d 708]: “ ‘A retrial of a count on which the jury fails to agree is not “another prosecution” within the meaning of Penal Code section 1023, and hence is not barred by the double jeopardy doctrine.’ ” In contrast, at line 5 on that page, the court stated that “the effect of the mistrial is that jeopardy has never attached.” The court seems not to have noted that in none of the cases cited for these two different versions of the rule did it make any difference which way the rule was stated; the question involved in those prior cases was whether or not the defendant could be retried, and both articulations of the rule produced the same result. In the Allen case itself, however, the way the rule was stated was critical, for the court relied on the language that jeopardy “has never attached” (when in fact at one time it' had attached) in making the ruling, without further discussion, that the order in question was appealable.
The Allen court took the position (41 Cal.App.3d at p. 824) that the appealability issue and the merits involved the identical question, and in this connection (at p. 825, fn. 4) the court cited United States v. Castellanos, 478 F.2d 749, which was also a double jeopardy case. In the Castellanos case the appealability issue and the merits actually did involve the same question, for the language of the controlling federal statute did not authorize a government appeal “where the double jeopardy clause of the United States Constitution prohibits further prosecution.” (18 U.S.C. § 3731.) Appealability in the Castellanos case was therefore controlled by the totality of the double jeopardy doctrine rather than by a determination that the defendant-had or had not “been placed in jeopardy.”
Significantly, the federal statute in the Castellanos case was an amended version of an earlier statute which had authorized a government appeal “where the defendant has not been put in jeopardy”—virtually the same language which appears in the California statute in question here. The United States Supreme Court had interpreted that earlier federal statute in United States v. Sisson, 399 U.S. 267 [26 L.Ed.2d 608, 90 *Supp. 11 S.Ct. 2117], and the principal opinion in that case had concluded that, once a jury had been impanelled, the government did not have the right to appeal a dismissal, even in situations where the double jeopardy doctrine permitted the defendant to be retried. (399 U.S. at pp. 302-307 [26 L.Ed.2d at pp. 630-634].) Whether or not the Sisson case is a true precedent on this point,[1] it was treated as one in the Castellanos case (478 F.2d at p. 750), and it is hardly possible that the Allen opinion would have cited the Castellanos case (involving the amended federal statute, which was different from California’s) and would have ignored the Sisson decision (involving the earlier federal statute, which was similar to California’s) if the court had been made aware of the critical difference between the preamendment and postamendment interpretations of the federal statute.
Another distinction between the A lien case and our own is that here the merits of the appeal involve Penal Code section 1385—dismissal “in furtherance of justice.” The merits of the Allen, Castellanos and Sisson cases involved questions of law, the standard fare of appellate jurisdiction. On the other hand, trial judges have traditionally been accorded greater latitude under section 1385; indeed, the antecedent of that section, the nolle prosequi of the English Attorney General, was discretionary. (See People v. Sidener, 58 Cal.2d 645, 647-649 [25 Cal.Rptr. 697, 375 P.2d 641]; People v. More, 71 Cal. 546, 547 [12 P. 631].) Moreover, if applied to section 1385, the Allen decision would lead to the anomalous result that a dismissal under section 1385 which was ordered before the end of a trial would not be subject to appeal (cf. People v. Superior Court (Biggs), 19 Cal.App.3d 522, 534-535 [97 Cal.Rptr. 118]), whereas a similar dismissal ordered after discharge of a deadlocked jury would be appealable. Almost certainly the trial judge would be in a better position to exercise section 1385 discretion in the latter situation than in the former. (See People v. Superior Court (Howard), 69 Cal.2d 491, 503 [72 Cal.Rptr. 330, 446 P.2d 138].) Applying the Allen case to section 1385 would lead to the equally anomalous result that a dismissal under section 1385 after discharge of a divided jury would be appealable, whereas a similar order following a conviction by unanimous vote of the jury (see *Supp. 12 People v. Superior Court (Howard), 69 Cal.2d 491, 501-505) would not be appealable.
For these reasons, we are hesitant to rule on the applicability of the Allen decision to a dismissal under section 1385 unless we are required to do so. Ordinarily we would decide jurisdiction before considering the merits, but here our view of the merits makes it unnecessary to determine jurisdiction; the result is the same whether we affirm for lack of jurisdiction or affirm on the merits after assuming jurisdiction. Accordingly we assume, without deciding, that we have jurisdiction, and we leave to the future the resolution of this special issue of appealability.
The judgment is affirmed.

 Before Grover, P. J., Deissler, J., and Slaughter, J.

Three other justices joined fully in the principal opinion authored by Mr. Justice Harlan. Although Mr. Justice Black did not join in the cited portion of the opinion, he did concur in the judgment dismissing the appeal. The dissenting opinion of Mr. Justice White should also be noted. (399 U.S. at p. 325, especially pp. 335-346 [26 L.Ed.2d at pp. 643-644, 649-656].) Taken together, the opinions in the Sisson case constitute an elaborate discussion of the history and policy involved in statutes permitting prosecution appeals.