NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0742n.06

No. 07-3151

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jul 10, 2012*

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,       )
                                 )
     Plaintiff-Appellee,        )
                                 )  ON APPEAL FROM THE UNITED
v.                              )  STATES DISTRICT COURT FOR THE
                                 )  SOUTHERN DISTRICT OF OHIO
RONALD TAYLOR,           )
                                 )        OPINION
     Defendant-Appellant.     )
                                 )
_____ )

Before: COLE and STRANCH, Circuit Judges; CARR, District Judge.[*]

**JANE B. STRANCH, Circuit Judge.** Ronald Taylor was tried and convicted by a jury of (1) conspiring to distribute more than 150 kilograms of cocaine, *see* 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846; and (2) engaging in a continuing criminal enterprise. On appeal, he argues that his conviction and sentence must be vacated for numerous reasons. For the reasons set forth below, we **AFFIRM** in part and **VACATE** in part the judgment of the district court.

## I. BACKGROUND

Taylor was the boss of a drug operation that delivered thousands of kilos of cocaine from Los Angeles and took in millions of dollars. He was responsible for having cocaine shipments sent to several cities, including Dayton and Columbus, Ohio. At least 2,000 kilograms of cocaine were distributed by the organization between the fall of 1999 and spring of 2001.

---

[*]The Honorable James G. Carr, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

Although Taylor was the boss of the organization, Delton Harris managed the day-to-day operations of the conspiracy. Harris was responsible for recruiting couriers and ensuring shipment of and payment for the distributed cocaine. Some of the couriers used by the drug operation were Richard Auston, Elbert Robinson, Danielle Garvin, Reggie Diggs, Charon May, Cheryl Taylor, and Veronica Sanders.

Taylor was first criminally charged for his drug-trafficking activities in 2002 in the District of Columbia. He was indicted and charged with four counts: (1) conspiring to distribute 5 kilograms or more of cocaine and 50 grams or more of cocaine base; (2) engaging in a continuing criminal enterprise; (3) possessing 5 kilograms or more of cocaine with the intent to distribute the drug; and (4) possessing cocaine with the intent to distribute the drug within 1000 feet of a school. The case was tried and the district court declared a mistrial in May 2003 because the jury deadlocked. Taylor was indicted again in D.C. in November 2003. This indictment included the four counts from the first trial and four additional counts (three for possessing 5 kilograms or more of cocaine with the intent to distribute the drug, and the last for maintaining a premises to manufacture, distribute, store, and use controlled substances). The case proceeded to trial in January 2003. Taylor was acquitted on three counts; the district court dismissed the eighth count; and the jury deadlocked on the remaining four, resulting in a second mistrial. The four counts the jury deadlocked on included the charges of conspiring to distribute 5 or more kilograms of cocaine and engaging in a criminal enterprise.

In September, Taylor was indicted by the grand jury for the Southern District of Ohio for conspiring to distribute more than 150 kilograms of cocaine and for engaging in a continuing criminal enterprise. The grand jury also indicted Richard Auston for similar conduct, though he was not

charged with engaging in a continuing criminal enterprise. A superseding indictment filed in November 2004 added two codefendants (Elbert Robinson and Danielle Garvin) and charged Taylor with the same two counts as the original indictment.

Taylor moved to dismiss the indictment on the grounds of improper venue and vindictive prosecution. He argued that charging him in the Southern District of Ohio was improper because he had been tried twice in the District of Columbia for similar offenses and both juries had deadlocked. The district court denied the motion.

After a two-month trial, the jury convicted Taylor on both counts. The district court sentenced Taylor to 360 months on the conspiracy charge and life imprisonment on the continuing-criminal-enterprise charge, to be served concurrently. Taylor timely appealed.

## II. ANALYSIS

### A. Venue and vindictive prosecution

Taylor argues that the government engaged in forum shopping and vindictive prosecution by prosecuting him in the Southern District of Ohio after two mistrials had been declared in the District of Columbia. He asserts that because the government did not present any basis for moving the case to or reindicting the case in Ohio, its true purpose was to seek a friendlier forum in which to seek a conviction, and that this purpose violates his right to due process.

Taylor's argument that the government did not present any basis to reindict the case in Ohio is incorrect. Although most of the documents in the D.C. case are sealed, the district court in this case indicated that the scope of the conspiracy claim presented to the jury in the present case was narrower than in the D.C. case. The superseding indictment from the grand jury in this case alleges several

overt acts that occurred in Ohio, but none that occurred in the District of Columbia. These differences make sense because in each case the government must prove that venue is proper—i.e., it must prove that it could prosecute Taylor in D.C. in the first two cases, and Ohio in the third. *See United States v. Crozier*, 259 F.3d 503, 519 (6th Cir. 2001) (holding that drug-conspiracy cases can be prosecuted "in any district where the conspiracy was formed or where an overt act in furtherance of the conspiracy was performed").

Taylor points to no case that bars the government from prosecuting him again after a mistrial due to a deadlocked jury: Case law holds this to be permissible. *United States v. Brown*, 677 F.2d 26, 27-28 (6th Cir. 1982). In fact, prosecuting a defendant a third time after two mistrials because of deadlocked juries is permissible. *United States v. Castellanos*, 478 F.2d 749, 750-53 (2d Cir. 1973). A mistrial for manifest necessity is essentially a do-over, allowing the government to reprosecute if it chooses to do so. *Id.* Because the government may reindict and prosecute a defendant following two mistrials caused by deadlocked juries, the real challenge posed by Taylor's forum-shopping claim is whether the indictment in Ohio was proper. This depends on the propriety of venue in that district. Using this analytical framework draws further support from Taylor's failure to point to any evidence that the government's conduct in indicting him in Ohio was predicated on impermissible grounds, other than the simple fact that he is now being prosecuted somewhere else.[1] We therefore analyze his forum-shopping claim as being a challenge to venue.

---

[1] For example, Taylor does not allege that the government did something specific to get a specific judge, or that it decided to prosecute in Ohio because it determined that Sixth Circuit precedent was more favorable than D.C. Circuit precedent.

### 1. Venue

Taylor previously moved that his case be dismissed for improper venue, but the district court denied the motion. By challenging the venue before this Court, he essentially appeals the district court's denial of that motion.

"The standard of review to be applied for a motion to dismiss an indictment is somewhat unclear." *United States v. Grenier*, 513 F.3d 632, 635 (6th Cir. 2008). When the motion to dismiss an indictment is based on factual findings, this Court has applied either an abuse-of-discretion or a clear-error standard. *Id.* at 635-36. But motions to dismiss based on legal grounds are generally reviewed de novo. *Id*. We need not decide whether Taylor's motion to dismiss for improper venue is reviewed de novo or under an abuse-of-discretion standard because his argument fails under either.[2]

For each count, the government must prove by a preponderance of the evidence that venue was proper. *Crozier*, 259 F.3d at 519. The indictment charged Taylor with conspiring to distribute more than 150 kilograms of cocaine and engaging in a continuing criminal enterprise. Drug-conspiracy cases can be prosecuted "in any district where the conspiracy was formed or where an overt act in furtherance of the conspiracy was performed." *Crozier*, 259 F.3d at 519. "A conspiracy defendant need not have entered the district so long as this standard is met." *Scaife*, 749 F.2d at 346. As previously mentioned, the superseding indictment listed several overt acts that occurred in the

---

[2]Although we need not decide the proper standard of review, an abuse-of-discretion standard is probably correct. The district court noted in its denial of Taylor's motion that venue is a factual question that the government must prove by a preponderance of the evidence at trial. *United States v. Taylor*, No. 3:04cr130, 2006 WL 4643321, at *1 (S.D. Ohio July 31, 2006) (citing *United States v. Scaife*, 749 F.3d 338, 346 (6th Cir. 1984); *United States v. Thomas*, 74 F.3d 701, 709 (6th Cir. 1996)).

Southern District of Ohio. And the government offered evidence at trial of overt acts that occurred in Ohio. So venue was proper as to this count. For a continuing-criminal-enterprise charge, venue is proper in any district where an act that furthered the criminal enterprise took place. *United States v. Kramer*, 955 F.2d 479, 486 (7th Cir. 1992). Because the conspiracy count was incorporated into the continuing-criminal-enterprise count in the superseding indictment, the government's proof that overt acts occurred in Ohio also establishes that venue is proper as to the continuing-criminal-enterprise count.

### 2. *Prosecutorial vindictiveness*

Taylor argues that prosecuting him in Ohio constitutes prosecutorial misconduct because the prosecution is vindictive. The district court denied his motion to dismiss the case based on this claim. We review a district court's denial of a motion to dismiss based on prosecutorial vindictiveness under the abuse-of-discretion standard. *United States v. Moon*, 513 F.3d 527, 534 (6th Cir. 2008).

Due process prohibits a prosecutor from retaliating against an individual because that individual exercised a statutory or constitutional right. *Id.* at 535. To establish prosecutorial vindictiveness, a defendant "must show either actual vindictiveness or a realistic likelihood of vindictiveness." *United States v. Roach*, 502 F.3d 425, 443 (6th Cir. 2007) (internal quotation marks omitted). Actual vindictiveness requires "objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights." *Id.* (internal quotation marks omitted). "The realistic-likelihood-of-vindictiveness standard examines the prosecutor's stake in deterring the exercise of a protected right and the unreasonableness of his actions." *Id.* (internal quotation marks omitted).

Taylor cannot satisfy either standard. He offers no objective evidence that the government reindicted him because he exercised a protected right. Rather, it appears that the government reindicted him because the previous jury deadlocked and the government believed the evidence was strong enough for a conviction. Because *Roach* held that reindicting the defendant following a mistrial did not raise a presumption of vindictiveness, *id.* at 444-45, it follows by even stronger force of logic that reindicting a defendant following a mistrial does not constitute objective evidence of prosecutorial misconduct.

Taylor cannot satisfy the realistic-likelihood-of-vindictiveness standard because he cannot show that the government's actions in reindicting him were unreasonable. This Court concluded that a superseding indictment following a mistrial that added two additional charges did not amount to unreasonable conduct by the prosecutor because the government had not objected to the mistrial, thereby making the government's response to the mistrial—seeking a superseding indictment—reasonable. *United States v. Poole*, 407 F.3d 767, 769, 776 (6th Cir. 2005). Taylor does not allege that the government objected to the mistrial in the D.C. case, and the docket sheet does not indicate that it did. And the government's indictment in the present case actually contains fewer counts against Taylor (two) than the indictments in the D.C. cases (four in the first, and eight in the second). *See United States v. Suarez*, 263 F.3d 468, 480 (6th Cir. 2001) ("Generally, a potentially vindictive superseding indictment must add additional charges or substitute more severe charges based on the same conduct charged less heavily in the first indictment.") And, just as was the case in *Poole*, "there exist[ed] objective information in the record to justify" the charges brought against

Taylor. *Poole*, 407 F.3d at 776. Taylor therefore cannot show that the government acted unreasonably in reindicting him.

Because Taylor cannot show that the prosecutor was unreasonable, he cannot meet the realistic-likelihood-of-vindictiveness standard. His claim of vindictive prosecution fails.

**B.     Double jeopardy and the convictions for both conspiracy and continuing criminal enterprise**

Taylor argues that convicting him for a conspiracy under 21 U.S.C. § 846 and a continuing criminal enterprise under 21 U.S.C. § 848 violates the Double Jeopardy Clause because those convictions punish him twice for the same conduct. The government agrees. The only issue is whether the remedy should be to vacate the conspiracy conviction or to remand to the district court so it can determine which conviction should be vacated (conspiracy or continuing criminal enterprise).

The government is correct that the conspiracy conviction should be vacated and that a remand is not necessary. *See United States v. Avery*, 128 F.3d 966, 971-72 (6th Cir. 1997) (vacating the conspiracy conviction without remanding because conspiracy is a lesser-included offense of continuing criminal enterprise and because sentencing range for conspiracy in the Guidelines is less than the range for continuing criminal enterprise). Although this Court has remanded in the past so the district court can determine which conviction to vacate, that result stemmed from an anomaly in the Guidelines that provided greater punishment for conspiracy than for a continuing criminal enterprise. *Id.* (discussing the basis for the holding in *United States v. Chambers*, 944 F.2d 1253 (6th Cir.1991)). Because that anomaly has been corrected and Taylor's continuing-criminal-enterprise

conviction results in greater punishment than his conspiracy conviction, we vacate the conspiracy conviction without remanding. *Id.*

## C.      Conflict of interest

The next issue is whether the district court erred in denying a motion for mistrial made by Taylor's attorney, Nicholas Gounaris, after the trial had started. Gounaris argued that he had a conflict of interest resulting from previous representation of Sentelle Smith (a potential witness in the present case) in a prior case that involved the theft of drugs, and that new counsel should therefore be appointed for Taylor. The district court denied the motion. On appeal, Taylor argues that Gounaris had an actual conflict of interest that deprived Taylor of the effective assistance of counsel.

We review denial of a motion for mistrial under an abuse-of-discretion standard. *United States v. Ursery*, 109 F.3d 1129, 1133 (6th Cir. 1997). And even if the motion by Gounaris is characterized as a motion to withdraw as counsel, a district court's denial of such a motion is still reviewed under an abuse-of-discretion standard. *United States v. Mooneyham*, 473 F.3d 280, 291 (6th Cir. 2007); *United States v. Sullivan*, 431 F.3d 976, 979-80 (6th Cir. 2005).

To prove an ineffective-assistance-of-counsel claim, Taylor must show that his attorney performed deficiently and that he was prejudiced by the attorney's error. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Prejudice exists when a defendant demonstrates a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. But prejudice is presumed "if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely

affected his lawyer's performance.'" *Id.* at 692 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348, 350 (1980)).

"Conflicts may arise when an attorney simultaneously represents clients with differing interests (multiple [i.e., concurrent] representation), or when an attorney representing a defendant has previously represented co-defendants or trial witnesses (successive representation)." *Moss v. United States*, 323 F.3d 445, 459 (6th Cir. 2003) (internal quotation marks omitted). The worry in successive-representation cases is that the attorney will fail to diligently cross-examine the former client for fear of disclosing or misusing privileged information. *Id.* at 460. So the most common example of successive representation creating an actual conflict of interest "occurs where an attorney's former client serves as a government witness against the attorney's current client at trial." *Id.*

Prevailing on an ineffective-assistance claim in cases involving successive representation is more difficult than in cases involving concurrent representation for two reasons. First, showing that counsel actively represented conflicting interests is more difficult in a successive-representation case. *Id.* at 459. Second, prejudice is not presumed in a successive-representation case unless it is an "atypical form of successive representation," where the facts more closely resemble a concurrent-

representation case.[3]  *See Jalowiec v. Bradshaw*, 657 F.3d 293, 315-17 (6th Cir. 2011); *accord*

*Stewart v. Wolfenbarger*, 468 F.3d 338, 350-51 (6th Cir. 2006).

With these principles in mind, we briefly review the facts relevant to the conflict-of-interest

issue.  Some of the overt acts alleged in the Superseding Indictment involve Taylor's drug

organization delivering 63 kilos of cocaine to Dayton, Ohio from California in March 2001.  The

dealer who received the cocaine, Joe Wright, stored some of it at his girlfriend's house in Ohio.  His

girlfriend betrayed him and staged a theft of the cocaine with Smith and Arvin Ridley, both of whom

then stored the cocaine at another location.  After things soured a few days later, Smith and Ridley

assisted the FBI in obtaining the cocaine.  Gounaris represented Smith in the ensuing criminal trial.

During Taylor's trial, FBI agent Robert Brawner's testimony recounted the staged theft of the

cocaine and Smith's participation in it.  The morning after the first part of Brawner's testimony,

during which Smith was mentioned, Gounaris told the district court his concerns that he had a conflict

based on his previous representation of Smith.  After speaking with all of the counsel about the issue,

the district court suspended the trial  from August 2 until August 14, 2006, allowing the government

to bring Smith to Dayton so that (1) defense counsel could interview him and determine whether they

---

[3]This Court held that such an unusual situation existed in *Moss* based on the following unique facts: "(a) the same attorney represented defendant Moss in pre-indictment proceedings, but represented Moss's co-defendant in all post-indictment proceedings; (b) the two co-defendants were tried together and collaborated in the defense; and (c) defendant Moss paid for his co-defendant's legal representation." *Jalowiec v. Bradshaw*, 657 F.3d 293, 315 (6th Cir. 2011).  The "counsel's 'successive and intertwining representations' created a conflict of interest" that justified applying the presumption.  *Id*. (quoting *Moss*, 323 F.3d at 465).  None of those unique circumstances exist in the present case.  In fact, Gounaris represented Sentelle Smith several years before he represented Taylor.

might want to call him as a witness, and (2) the court could appoint counsel for Smith to determine whether Smith was willing to waive his attorney-client privilege with respect to Gounaris.

Smith arrived, the court appointed counsel for him, and, after Smith discussed the issue of waiving the privilege with his appointed counsel, Smith stated that he was willing to waive the privilege. The district court then questioned Smith before Smith waived the privilege and ensured that Smith understood the consequences of agreeing to waive the privilege, which included the following: Gounaris could disclose to anyone anything that Smith had told him; Smith could be required to testify; Gounaris could ask about anything that Smith had told him in confidence if Gounaris were to examine or cross-examine Smith; the attorneys for the defendants and government would want to speak with Smith; Gounaris could use anything he was told by Smith as a basis for questions to other witnesses; and Gounaris could use the information Smith had shared with him in any way without restriction.

The district court then denied the motion for a mistrial for three reasons: this was Taylor's third trial, a mistrial would delay the case by 12 to 18 months, and the use of Smith was still theoretical. On September 8, 2006, after the defense attorneys had interviewed Smith and the trial resumed, they informed the court that their clients did not wish to call Smith as a witness. The government did not call Smith as a witness either.

On appeal, Taylor argues that Gounaris had a conflict of interest because he faced the following dilemma: "call a client [Smith] who would be damaged by his testimony, but would help the current client [Taylor], or hurt the current client's chances of success by protecting Smith[.]" Taylor then asserts that this conflict deprived him of the effective assistance of counsel. Taylor's

framing of the issue is inaccurate. Because Smith was a former client of Gounaris's, the facts implicate successive representation rather than concurrent representation.

The successive representation in the present case did not render Gounaris's assistance ineffective. To show that an actual conflict existed that adversely affected Gounaris's performance, Taylor "had to show that counsel was influenced in his basic strategic decisions by the interests of the former client." *Jalowiec*, 657 F.3d at 317 (internal quotation marks omitted). Taylor hasn't shown this. The concern Taylor raises is that Gounaris would have divided loyalties that would impede his ability both to objectively decide whether calling Smith as a witness helped his client and to rigorously examine or cross-examine Smith should the need arise. But the district court addressed this concern—which stemmed from the attorney-client privilege between Gounaris and Smith—by appointing counsel for Smith to see if he was willing to waive the privilege. Smith was, thereby obviating the fear that Gounaris could not consider calling Smith as a witness based solely on whether it would help Taylor, his current client. And as the government points out, any possibility of conflict existing after the court denied Gounaris's mistrial motion disappeared when counsel for all the defendants informed the court that their clients did not wish to call Smith as a witness. Taylor fails to meet the first *Strickland* prong of deficient performance.

Taylor also does not show the requisite prejudice. He does not even argue—let alone show—that there is a reasonable probability that the result of his trial would have been different if the asserted conflict of interest had not existed. This showing is required because prejudice is not presumed based on the garden-variety successive representation at issue here. *See Jalowiec*, 657 F.3d

at 315-17; *Stewart*, 468 F.3d at 350-51. The district court therefore did not abuse its discretion in denying Taylor's motion for a mistrial based on Gounaris's past representation of Smith.

**D. Right to be present at critical stages of the proceedings**

The next issue is whether the district court violated Taylor's right to be present at critical stages of the proceedings. Taylor argues (1) that he was absent from "most of the pre-trial hearings, during side bars, and most importantly, during the hearing on counsel's conflict of interest" and (2) "that these absences were during critical stages of the proceedings."

Taylor did not object to being excluded from these proceedings until over two months after the jury found him guilty. *See* Fed. R. Crim. P. 29(c)(1), 33(b) (providing that these motions, to the extent that they seek an acquittal or a new trial, must have been filed within 14 days after the jury returned its guilty verdict). Because he failed to contemporaneously object at trial when these proceedings occurred, this issue is reviewed under the plain-error standard. *See Puckett v. United States*, 556 U.S. 129, 135 (2009); *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc).

As the government notes, the right to be present at the critical stages of trial is rooted in the Due Process Clause (Fifth Amendment) and the Confrontation Clause (Sixth Amendment), and has been codified in Rule 43 of the Federal Rules of Criminal Procedure. *United States v. Gagnon*, 470 U.S. 522, 526-27 (1985). Because Taylor doesn't specifically identify the basis for the alleged violation, we address the three bases in turn.

### 1.     *Right to confront witnesses*

The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  The right to cross-examine witnesses is a primary interest protected by the clause.  *Kentucky v. Stincer*, 482 U.S. 730, 736 (1987).  So for purposes of the Confrontation Clause, the issue is whether excluding Taylor from the proceedings he complains about interfered with his ability to effectively cross-examine witnesses during the trial.

Taylor's claim that his confrontation rights were violated is hastily sketched and lacks detail. He does not specify which pretrial hearings or sidebar conferences were critical stages nor does he explain how failing to attend these stages interfered with his cross-examining witnesses.  Moreover, the sidebar conferences and the chambers conferences considering Gounaris's possible conflict of interest dealt with matters of law or decisions regarding trial procedures and the progress of the trial. *See United States v. Jones*, 381 F.3d 114, 122-23 (2d. Cir. 2004) (noting that because the question whether defendant's counsel had a conflict of interest was one of law, the defendant's presence was excused by Rule 43(b)(3)); *United States v. Barth*, 424 F.3d 752, 762-63 (8th Cir. 2005) (holding that a "defendant's presence is not required at a conference regarding trial procedure"); *United States v. Romero*, 282 F.3d 683, 689-90 (9th Cir. 2002) (holding that a defendant does not have a constitutional or statutory right to attend a conference between the court and counsel to discuss jury instructions). Taylor does not show how his presence at proceedings dealing with questions of law or trial procedure impacted his ability to effectively cross-examine witnesses.  Significantly, he was present

throughout his trial and was therefore able to assist his counsel in cross-examining the witnesses against him.

## 2. *Right to due process*

A defendant has a due-process right to be present at a stage of the criminal proceeding "to the extent that a fair and just hearing would be thwarted by his absence. Thus a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Stincer*, 482 U.S. 730 at 745 (internal citations and quotation marks omitted). This means that Taylor's "right to be present at every stage of the trial is not absolute, but exists only when 'his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'" *United States v. Henderson*, 626 F.3d 326, 343 (6th Cir. 2010) (quoting *Stincer*, 482 U.S. at 745).

Although Taylor baldly asserts that he "would certainly have been able to provide input on those matters," he fails to explain how his presence at unspecified pretrial hearings, sidebar conferences, or chambers conferences relating to Gounaris's potential conflict would have contributed to the fairness of the proceeding. The record neither indicates that Taylor "could have done anything had he been at the hearing nor would he have gained anything by attending." *Stincer*, 482 U.S. at 747 (brackets omitted) (quoting *Gagnon*, 470 U.S. at 527). He has therefore failed to show that his due-process rights were violated by being excluded from these proceedings.

## 3. *Rule 43 of the Federal Rules of Criminal Procedure*

Rule 43 provides that "the defendant must be present at: (1) the initial appearance, the initial arraignment, and the plea; (2) every trial stage, including jury impanelment and the return of the

verdict; and (3) sentencing." It also specifies that a defendant does not need to be present during a "conference or hearing on a question of law." Fed. R. Crim. P. 43(b)(3). Taylor's belatedly filed motions in district court alleged that excluding him from pretrial hearings, sidebar conferences, and chambers conferences violated Rule 43. In rejecting these motions, the district court properly reasoned that Taylor was not present at these proceedings because the "Court and counsel discussed legal matters during those conferences, such as the admissibility of evidence, jury instructions, the potential conflict of interest of Taylor's counsel, and trial procedure. Therefore, the Defendants' presence was excused by Rule 43(b)(3)." Moreover, because Taylor's counsel was present at all of these proceedings, his interests were represented. The district court was therefore correct in finding that Rule 43 was not violated. *See Jones*, 381 F.3d at 122 (noting that because the question whether defendant's counsel had a conflict of interest was one of law, the defendant's presence was excused by Rule 43(b)(3)); *Barth*, 424 F.3d at 762 (holding that a "defendant's presence is not required at a conference regarding trial procedure"); *Romero*, 282 F.3d at 689-90 (holding that a defendant does not have a constitutional or statutory right to attend a conference between the court and counsel to discuss jury instructions).

Taylor's absence from the challenged proceedings did not violate his right to confront witnesses, due process, or Rule 43. He cannot show error—let alone the plain error necessary to prevail on this issue.

**E.     Sufficiency of the evidence**

The next issue is whether the evidence was sufficient to convict Taylor of engaging in a continuing criminal enterprise. Taylor argues that the record "is devoid of evidence that Taylor

himself obtained substantial income from the specific drug acts in question," and that the evidence is therefore insufficient to support his continuing-criminal-enterprise conviction.

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court set forth the standard for challenges based on sufficiency of the evidence. *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). Under this standard, a reviewing court does not reweigh the evidence, redetermine witness credibility, or substitute its judgment for the factfinder's. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (citation omitted).

To convict a defendant of engaging in a continuing criminal enterprise, the government must prove

> (1) that the defendant committed a felony violation of federal narcotics laws; (2) that the violation was part of a continuing series of three or more drug offenses committed by the defendant; (3) that the defendant committed the series of offenses in concert with five or more persons; (4) that the defendant acted as an organizer, supervisor, or manager with regard to these five or more persons; and (5) that the defendant obtained substantial income or resources from this series of violations.

*United States v. Burns*, 298 F.3d 523, 535 (6th Cir. 2002) (internal quotation marks omitted). Taylor challenges the sufficiency of the evidence with respect to only the fifth element.

The text of the statute makes clear that the fifth element can be satisfied by proving substantial income or *resources*, "a word that denotes not just monetary receipts but also things in kind." *United States v. Torres-Laranega*, 476 F.3d 1148, 1158 (10th Cir. 2007); *accord* 21 U.S.C. § 848(C)(2)(B). *Resources* also includes "immediate *and possible* sources of revenue." *Id.* (quoting Webster's Third

New International Dictionary 1934 (2002)). So drugs themselves are *resources* within the meaning of § 848. *United States v. Herrera-Rivera*, 25 F.3d 491, 499 (7th Cir. 1994). Proving that the defendant's income or resources are substantial may be accomplished "either by direct evidence of the revenues realized and resources accumulated by the defendant, or by such circumstantial evidence as the defendant's position in the criminal organization and the volume of drugs handled by the organization." *United States v. Hahn*, 17 F.3d 502, 507 (1st Cir. 1994); *accord Torres-Laranega*, 476 F.3d at 1156-57; *United States v. Roman*, 870 F.2d 65, 75 (2d Cir. 1989); *see Herrera-Rivera*, 25 F.3d at 499. Moreover, the requirement that the defendant's revenue or resources accumulated through the criminal enterprise be substantial does not establish a fixed minimum amount, but rather is "intended 'to exclude trivial amounts derived from occasional drug sales.'" *Hahn*, 17 F.3d at 507 (quoting *Roman*, 870 F.2d at 75).

In the present case, the evidence was more than sufficient for the jury to find that Taylor obtained substantial income or resources from his drug enterprise, especially when the evidence is viewed in the light most favorable to the prosecution. The evidence from which the jury could draw this conclusion included the following: (1) the volume of drugs that the enterprise acquired and distributed (100 kilos a week from the summer of 2000 until the end of 2000); (2) the number of cars the organization owned and used to transport cocaine (two Expeditions, a Navigator, and a Chevy Astro Van); (3) the amount of money that changed hands during the drug deals (about 4.4 million dollars taken in just from supplying drugs to Dayton, Ohio); (4) the amount of money couriers were paid for delivering the drugs (Reginald Diggs made $5,000 to $30,000 per trip on between 18 to 25

trips and Charon May made between $1,000 to $6,000 per trip); and (5) the testimony that Taylor was the head of the organization.

This evidence shows that millions of dollars and thousands of kilos of cocaine passed through the organization that Taylor ran. In the face of this evidence, Taylor argues that the evidence was insufficient to conclude that he garnered substantial income or resources from this criminal enterprise because he "was not found to have large sums of cash, fancy clothes or items, or large amounts of goods." But the jury could reasonably infer that a significant share of the drugs and revenue taken in by the organization went to Taylor because he was the head of the organization. *See Torres-Laranega*, 476 F.3d at 1156-57. Given the strength of the evidence, a rational trier of fact could readily conclude that Taylor obtained substantial income and resources from his drug-trafficking operation.

## F.     Speedy trial

The final issue is whether Taylor's constitutional and statutory rights to a speedy trial were violated. Taylor was indicted on September 29, 2004, and his trial started on July 31, 2006. He argues that this 22-month delay violated his speedy-trial rights. He made the same argument to the district court in a motion to dismiss, but the district court denied it.

In deciding "whether a defendant's right to a speedy trial has been violated, this court reviews questions of law de novo and questions of fact under the clearly erroneous standard." *United States v. Ferreira*, 665 F.3d 701, 705 (6th Cir. 2011) (italics and internal quotation marks omitted). "We review the District Court's legal interpretation of the Speedy Trial Act de novo and review the factual

findings supporting its ruling for clear error." *United States v. DeJohn*, 368 F.3d 533, 538 (6th Cir.

2004) (brackets and internal quotation marks omitted).

### 1.      Constitutional right to a speedy trial

The Sixth Amendment provides that criminal defendants "shall enjoy the right to a speedy and

public trial." Whether a delay violates a defendant's speedy-trial right depends on the following four-

factor balancing test: "(1) the 'length of the delay'; (2) 'the reason for the delay'; (3) 'the defendant's

assertion of his right'; and (4) 'prejudice to the defendant.'" *Ferreira*, 665 F.3d at 705 (quoting

*Barker v. Wingo*, 407 U.S. 514, 530 (1972)) (brackets omitted). No one factor is controlling; they

must be considered together along with other relevant circumstances. *Id*.

The government concedes that the delay of 22 months is uncommonly long and is therefore

presumed to be prejudicial. So the first factor weighs in favor of concluding that the delay violated

Taylor's speedy-trial right.

The second factor addresses the reason for the delay, analyzing who is "more to blame," the

government or the criminal defendant. *Doggett v. United States*, 505 U.S. 647, 651 (1992). The

blame associated with delays caused by the government depends on the cause of the delay. *United*

*States v. Schreane*, 331 F.3d 548, 553-54 (6th Cir. 2003).

> A deliberate attempt to delay the trial in order to hamper the defense should be
> weighted heavily against the government. A more neutral reason such as negligence
> or overcrowded courts should be weighted less heavily but nevertheless should be
> considered since the ultimate responsibility for such circumstances must rest with the
> government rather than with the defendant. Finally, a valid reason, such as a missing
> witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531 (footnote omitted).

In the present case, the district court found that the delay was caused by the case's complexity and the actions of the defendants and their counsel, who filed a variety of motions—including motions for new counsel that were granted and motions to suppress evidence that were not—and requested continuances. The court's summary of the time line leading up to trial and the various reasons the trial date kept getting pushed back is thorough and supported by the record. All of the requests for continuances filed by the defendants or their counsel were granted by the court. The court found that virtually none of the delay was attributable to the government. The case's complexity resulted in delays primarily because the new counsel appointed for Auston and Taylor needed more time to prepare for such a complex trial. Not only is the finding that the delay was mainly caused by the defendants and their counsel not clearly erroneous, that finding is supported by the record. This factor weighs in favor of concluding that Taylor's speedy-trial rights were not violated.

The third factor addresses whether the defendant asserted his speedy-trial rights in a timely fashion under the circumstances. *See Barker*, 407 U.S. at 531-32; *Wilson v. Mitchell*, 250 F.3d 388, 396 (6th Cir. 2001). "A defendant's failure to assert his rights in a timely fashion weighs heavily against his Sixth Amendment claim." *United States v. Thomas*, 167 F.3d 299, 305 (6th Cir. 1999) (citing *Barker*, 407 U.S. at 531–32). Taylor did not assert his speedy-trial rights until he filed a motion to dismiss on July 14, 2002, almost 22 months after he was indicted and only 17 days before trial started. This factor therefore weighs against concluding that Taylor's speedy-trial rights were violated.

The fourth and final factor addresses whether Taylor suffered prejudice as a result of the delay.

> A defendant must show that "substantial prejudice" has resulted from the delay. The Supreme Court has identified three relevant forms of prejudice in speedy trial cases: (1) "oppressive pretrial incarceration"; (2) "anxiety and concern of the accused"; and (3) "'the possibility that [the accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence." *Doggett*, 505 U.S. at 654 (quoting *Barker*, 407 U.S. 514 at 532) (alteration in original). "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Baker*, 407 U.S. at 532.

*Schreane*, 331 F.3d at 557-58 (first internal citation omitted).

Taylor argues that the delay prejudiced him because he spent his "pre-trial time incarcerated, without access to [an] adequate law library, and without the means to further his case. Taylor was unable to identify witnesses for his defense, and was unable to present a defense, as he had conflicted counsel." But his argument is conclusory. He doesn't explain how being incarcerated prevented him from contacting witnesses. In addition, he doesn't explain what kinds of witnesses he would have been able to identify or how he would have identified them had he been free, and he doesn't explain why access to a library was significant to his case. His argument that conflicted counsel prejudiced him is also unpersuasive because the potential conflict was resolved and did not develop into an actual conflict that adversely affected his lawyer's performance or that prejudiced his defense. Besides, Taylor was the one who decided not to call Smith as a witness. As the government points out, Taylor knew from the previous two trials what kinds of evidence the government would present, who many of the government's witnesses would be, and which witnesses he could call to aid in his defense. These facts undercut his claims of prejudice, which are sketched in the barest fashion. Taylor therefore did not suffer prejudice as a result of the delay.

Because the second, third, and fourth factors weigh against Taylor, we conclude that Taylor's

constitutional right to a speedy trial was not violated.

### 2.      *Statutory right to a speedy trial*

The Speedy Trial Act (Act), 18 U.S.C. §§ 3161-3174, "generally requires a federal criminal

trial to begin within 70 days after a defendant is charged or makes an initial appearance, § 3161(c)(1),

but the Act contains a detailed scheme under which certain specified periods of delay are not

counted." *Zedner v. United States*, 547 U.S. 489, 492 (2006).  Four such periods are relevant in the

present case.

First, the Act excludes "[a] reasonable period of delay when the defendant is joined for trial

with a codefendant as to whom the time for trial has not run and no motion for severance has been

granted."  18 U.S.C. § 3161(h)(6).  Because this excluded delay may be ascribed to all defendants

who are joined for trial, all defendants generally fall within the speedy-trial computation of the last

one joined.  *United States v. Blackmon*, 874 F.2d 378, 380 (6th Cir. 1989) (citing *Henderson v. United

States*, 476 U.S. at 323 n.2 (1986)).  Second, the Act excludes delays stemming from "ends-of-justice

continuances."  *Zedner*, 547 U.S. at 498; *accord* 18 U.S.C. § 3161(h)(7)(A).  Section 3161(h)(7)(A)

"permits a district court to grant a continuance and to exclude the resulting delay if the court, after

considering certain factors, makes on-the-record findings that the ends of justice served by granting

the continuance outweigh the public's and defendant's interests in a speedy trial."  *Zedner*, 547 U.S.

at 498-99.  Third, the Act excludes any "delay resulting from any pretrial motion, from the filing of

the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."

18 U.S.C. § 3161(h)(1)(D); *accord United States v. Tinklenberg*, 131 S. Ct. 2007, 2010-12, 2016

(2011). This excluded delay is triggered by the filing of any pretrial motion irrespective of whether that motion "actually causes, or is expected to cause, delay in starting a trial." *Tinklenberg*, 131 S. Ct. at 2011. Fourth, the Act excludes a "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." 18 U.S.C. § 3161(h)(1)(H).

In arguing that his statutory right to a speedy trial was violated, Taylor does not even attempt to apply the complicated statutory rules to show which delays counted towards the 70 days and which are properly excluded. He instead relies on this Court's decision in *United States v. Tinklenberg*, 579 F.3d 589 (6th Cir. 2009), *aff'd on other grounds*, 131 S. Ct. 2007, for the proposition that delays from pretrial motions do not stop the speedy-trial clock unless those motions could possibly delay the trial. Using this rule, he simply claims that after excluding delays from pending motions which could have reasonably delayed trial, hundreds of days includable under the speedy-trial clock remain. In addition to being bare bones, this argument suffers from a false premise. The Supreme Court overturned this Court's decision in *Tinklenberg* and held that filing pretrial motions automatically stops the speedy-trial clock, irrespective of whether the motion "actually causes, or is expected to cause, delay in starting a trial." *Tinklenberg*, 131 S. Ct. at 2010-12, 2016.

Applying the statutory rules demonstrates that Taylor's trial began within the required 70 days. The last defendant joined for trial was Elbert Robinson, who was arraigned on January 21, 2005. The clock would ordinarily have started then. *See* 18 U.S.C. § 3161(h)(6); *Blackmon*, 874 F.2d at 380. But Richard Auston's motion to dismiss—which he had filed on January 6, 2005, and which was still pending on that date—stopped the clock under § 3161(h)(1)(D) and the reasoning of the Supreme

Court's decision in *Tinklenberg*. And that motion was still pending and there hadn't been a hearing on it when, on March 9, 2005, codefendant Robinson filed a motion to suppress. The suppression motion was joined by the other defendants and the various hearings and briefing on the suppression issue did not conclude until the final brief in support of that motion was filed on March 1, 2006. Because the district court did not decide that motion until more than 30 days later on April 27, 2006, the clock would have started running on April 1. *See* 18 U.S.C. § 3161(h)(1)(H). But on March 22, 2005, codefendant Robinson filed a motion to set a detention hearing, stopping the clock. The court heard this motion on May 8, 2006, and took it under advisement, stopping the clock for up to another 30 days under 18 U.S.C. § 3161(h)(1)(H). The Court decided the detention-hearing motion on May 19, 2005, which would have started the clock. But on May 5, 2006, codefendant Garvin moved to continue the trial. The court considered this motion at a status conference on May 12, 2006, and granted it, making an ends-of-justice finding on the record on May 22, 2006. Trial was continued until July 31, 2006, and the trial did start on that date.

Based on these calculations, there were no days that counted towards the 70-day limit imposed by the Act. Taylor has therefore failed to show that his rights to a speedy trial under the Act were violated.

## CONCLUSION

For the reasons set forth above, we **VACATE** Taylor's conspiracy conviction and **AFFIRM** the judgment of the district court in all other respects.